Roy **BARNARD** and Kerri Anderson, Appellants,

v.

Curtis **ANDERSON**, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 8, 2000.

Filed Jan. 23, 2001.

Phillip L. Clark, New Castle, for appellants.

John A. Aranyos, Warren, for Curtis Anderson, appellee.

Jodi K. Bevevino, Warren, for Gabriel Anderson, participating party.

Before JOHNSON, TODD, and BROSKY, JJ.

TODD, J.:

¶ 1 Roy Barnard appeals from the order entered November 18, 1999 by the Honorable Robert L. Wolfe, Specially Presiding Judge of the McKean County Court of Common Pleas, which granted Curtis Anderson's Motion for Compulsory Nonsuit by determining that the "presumption of paternity" of Curtis Anderson applied, and holding that Appellant lacked legal capacity and standing to bring suit for the custody of Gabriel Q. Anderson, born August 15, 1998. Upon review of the record in this matter, we vacate the order of November 18, 1999 and remand for further proceedings consistent with this Opinion.

¶ 2 The relevant facts gleaned from the record are as follows: Kerri Anderson (now Kerri Barnard) and Curtis Anderson were married on August 11, 1990. Three children were born of this marriage. It is undisputed that Curtis Anderson underwent a vasectomy in 1994. In late 1997 Kerri Anderson became pregnant, and gave birth to Gabriel Anderson on August 15, 1998. Curtis Anderson testified that when he learned his wife was pregnant in December 1997, he initially believed he had not fathered Gabriel, but then came to believe it was possible that he had. (N.T., 11/18/99, at 39–40.)

¶ 3 The parties separated five months after Gabriel's birth in January 1999, when Kerri Anderson moved, with her four children, to live with her parents. Curtis Anderson filed a complaint in divorce on January 20, 1999. On March 2, 1999, Roy Barnard filed a custody complaint in Warren County alleging that he is Gabriel's natural father and that he had established a warm, loving bond with Gabriel. The custody complaint further acknowledged

that the child was born during the marriage of Kerri and Curtis Anderson and that Curtis Anderson was named as Gabriel's father on his birth certificate. A final divorce decree was entered on August 30, 1999. That same month, Kerri Anderson relocated to Ohio with Gabriel to reside with Roy Barnard. She subsequently married Roy Barnard.

¶ 4 Curtis Anderson filed preliminary objections to Roy Barnard's custody complaint requesting a change of venue to McKean County.[1] On April 26, 1999, Anderson filed amended preliminary objections alleging that Barnard lacked capacity to sue and had failed to state a cause of action in his complaint for custody based on the presumption of Curtis Anderson's paternity. On May 5, 1999, the preliminary objections regarding venue were granted and the action was transferred to McKean County Common Pleas Court.

¶ 5 The trial court appointed separate counsel to represent the interests of the minor child, Gabriel, in the custody action. Gabriel's counsel filed a comprehensive brief in support of Roy Barnard's position prior to the November 18, 1999 evidentiary hearing on Curtis Anderson's additional preliminary objections. Nevertheless, at the conclusion of the hearing, the trial court granted Curtis Anderson's motion for compulsory non-suit, ruling that an "irrebuttable presumption" of paternity of Curtis Anderson applied and that "[Appellants'] testimony falls far short of the necessary proof by clear and convincing evidence to pierce the presumption of paternity of the child 'Gabriel' in Curtis Anderson." (Trial Court Order, 11/18/99.)[2] Accordingly, the Court

---

1. Although Curtis Anderson's preliminary objections as to venue were sustained and the matter transferred to the jurisdiction of McKean County, the custody proceedings were conducted in Warren County for the convenience of the parties.

2. We note that while the court states in its Memorandum Opinion that the presumption

of paternity of Curtis Anderson is "irrebutable", it states in the accompanying Order that "Plaintiffs' testimony falls far short of the necessary proof by clear and convincing evidence to pierce the presumption of paternity of the child 'Gabriel' in Curtis Anderson." (*Id.*)

ruled that DNA (paternity) test results would be inadmissible. Barnard timely appealed, raising the following question for our review, which we have paraphrased:

Whether the trial court erred in holding that the presumption of paternity applied where Kerri and Curtis Anderson separated five months after Gabriel's birth, two months prior to Roy Barnard's filing of the custody complaint, and were divorced two months prior to the evidentiary hearing on Curtis Anderson's preliminary objections?

(Appellants' Brief at 4. )

¶ 6 As we have done numerous times before, we again review the application of the age-old presumption that a child born to a married woman is the child of the woman's husband. Our review of the case law in this area leads us to a number of Supreme Court decisions, as well as decisions of this Court, that serve to guide us in our analysis. As the Supreme Court stated in *Strauser v. Stahr*, 556 Pa. 83, 726 A.2d 1052 (1999):

Traditionally, the presumption can be rebutted only by proof either that the husband was physically incapable of fathering a child or that he did not have access to his wife during the period of conception. Thus, it has been held that, where the presumption applies, blood test results (existing or potential) are irrelevant unless and until the presumption has been overcome. It has also been held that, in one particular situation, no amount of evidence can overcome the presumption: where the family (mother, child, and husband/presumptive father) remains intact at the time that the husband's paternity is challenged, [by a third party] the presumption is irrebuttable.

*Id.* at 88, 726 A.2d at 1054 (citations omitted).

¶ 7 More recently, the Supreme Court carved out certain exceptions to the blanket rule that the presumption of paternity applies in every case. The Court, in *Fish*

*v. Behers*, 559 Pa. 523, 741 A.2d 721 (1999), stated that "[t]he policy underlying the presumption of paternity is the **preservation of marriages. The presumption only applies in cases where that policy would be advanced by the application; otherwise it does not apply.**" *Id.* at 528, 741 A.2d at 723 (1999) (emphasis supplied) (quoting *Brinkley v. King*, 549 Pa. 241, 250–51, 701 A.2d 176, 181 (1997)).

¶ 8 In *Brinkley*, the Supreme Court set forth the analysis required to determine paternity of a child conceived or born during a marriage as follows:

[T]he essential legal analysis in these cases is twofold: first, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered. If the trier of fact finds that one or both of the parties are estopped, no blood tests will be ordered.

*Brinkley*, 549 Pa. at 250, 701 A.2d at 180.

¶ 9 Recently, in *Sekol v. Delsantro*, 763 A.2d 405, 2000 WL 1724885 (Pa.Super.Nov.21, 2000), this Court reviewed the appeal of Paul Sekol, the putative father of a child potentially conceived in a relationship between Kelly Sekol and Delsantro prior to Kelly's marriage to Paul. After becoming pregnant, Kelly married Paul and did not tell him that the child was not conceived in their marriage. The child was born during the marriage and Paul never questioned whether he was the natural father of the child until he overheard Kelly talking on the telephone about her desire that Delsantro become more involved with the child. The parties then

separated and Kelly then told Paul that he was not the child's natural father. A divorce complaint was filed and Kelly filed a support action against Delsantro, alleging that he was the child's natural father. *Id.* at *1. Delsantro denied paternity and presented a motion to prevent genetic testing, alleging that because Kelly and Paul were married at the time of the child's birth, the presumption of paternity applied and therefore Paul should be presumed to be the child's father. Delsantro further argued that the conduct of Kelly and Paul estopped Kelly from seeking child support from anyone but Paul. Paul argued that the presumption of paternity should not apply and also claimed that after learning of the child's true biological parentage, he stopped holding the child out as his own and stopped supporting him financially. *Id.*

¶ 10 The trial court held that the presumption of paternity applied and ruled that Paul was the legal parent of the child and, therefore, was responsible for his support. This Court reversed the trial court's determination, holding that the presumption of paternity did not apply in that case because the parties had separated and a divorce action was pending prior to the support hearing initiated by Kelly against Delsantro. *Id.* at *3. Accordingly, we held that the trial court erroneously applied the presumption of paternity in that its underlying purpose (preservation of marriage) could no longer be achieved by holding that it applied. *Id.*

■ ¶ 11 Our review of the record in the case before us leads us also to conclude that the trial court improperly applied the presumption of paternity. The trial court distinguished this case from the facts of *Brinkley, supra,* stating that because the child in *Brinkley* was born after the parties had separated, the cases were distinguishable. We disagree and find this to be a distinction without a difference. Indeed, although Kerry and Curtis Anderson remained married and lived together for five months after Gabriel's birth, the very pur-

pose for application of the presumption, preservation of the marriage, has been thwarted and is no longer relevant, for the parties were divorced before the hearing in this matter. Moreover, we note that Appellant is now married to Kerri and wishes to raise Gabriel within that nuclear family. Additionally, the hearing transcript reflects that as of the hearing in November 1999, Curtis Anderson had not seen Gabriel for nearly eight months and had not sought court-ordered visitation until October 28, 1999, when he filed a petition for special relief requesting visitation.

¶ 12 Furthermore, we note that counsel for Gabriel has filed a comprehensive and persuasive brief in support of Appellant's position that the presumption of the paternity of Curtis Anderson should not apply under the facts of this case. Accordingly, we hold that the trial court erroneously applied the presumption of paternity and improperly granted Curtis Anderson's motion for non-suit as to the custody claim of Roy Bernard.

■ ¶ 13 However, our analysis of this matter is not complete, for under the Supreme Court's holding in *Brinkley,* even if the presumption is inapplicable, estoppel may bar a party from making the claim of paternity or an opposing party from denying it. *Brinkley,* 549 Pa. at 250, 701 A.2d at 180. The hearing transcript reflects the trial court's pervasive assumption that the presumption of paternity applied to Curtis Anderson and the primary focus of the testimony taken at the hearing involved the question of whether the presumption was rebutted either by lack of access or the vasectomy of Curtis Anderson.

■ ¶ 14 Although some limited testimony was taken bearing on the question of estoppel, the certified record is insufficient to provide guidance on this question. Because of the trial court's application of the presumption and its potential impact on the testimony and evidence adduced regarding any potential estoppel defense, remand of this matter is necessary in order

to permit the parties to raise and pursue such a defense in light of our determination that the presumption of paternity does not apply under the facts of this case. On remand, the trial court shall conduct a full evidentiary hearing in light of our holding that the presumption of paternity does not apply giving due consideration to any potential claims of estoppel.

¶ 15 Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.