STEVENS, J.
¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Bradford County directing Appellant D.W.T. to appear for genetic blood testing.[1] On appeal, Appellant contends that (1) the trial court erred in refusing to apply the presumption that a child conceived or born during marriage is a child of the marriage, and (2) the trial court erred in holding that estoppel did not bar Appellee T.L.F. from making a claim against Appellant for child support. We affirm.
¶2 The relevant facts and procedural history are as follows: Appellee is married to D.F. In November of 1999, Appellee, while continuing to reside with her husband, began having extramarital sexual intercourse with Appellant. The extramarital sexual relations occurred approximately two to three times per week between November of 1999 and August of 2000. On the other hand, Appellee and D.F. ceased sexual intercourse with each other during most of 1999, with the exception of September 1999, and all of 2000. Besides D.F. and Appellant, Appellee had no other sexual partner in 1999 or 2000.
¶ 3 In March of 2000, Appellee and D.F. separated,[2] and Appellee told D.F. that she was pregnant. Appellee informed D.F. that he was not the father of the child, and, on August 15, 2000, Appellee gave birth to E.F. Appellant was present at the hospital when E.F. was born, but D.F. was not. However, D.F. visited Appellee and E.F. while they were in the hospital. E.F.’s birth certificate contains no information concerning the identity of the father. Since E.F.’s birth, D.F. has babysat the child while he was also watching his and Appellee’s biological minor child, J.F.
¶ 4 On October 16, 2000, Appellee filed a complaint for support as to Appellant, claiming that he is E.F.’s biological father, and at a conference before the Bradford County Domestics Relations Office, Appellant refused to acknowledge paternity. On November 13, 2000, the trial court ordered Appellee, Appellant, and E.F. to appear for genetic blood testing. On November 17, 2000, Appellant filed a motion to strike the testing, alleging that there is presumption that D.F. is E.F.’s biological father since E.F. was conceived or born during *361 D.F.’s and Appellee’s marriage, and Appel-lee was estopped from alleging Appellant is the father.
¶ 5 Following a hearing held on December 20, 2000, the trial court entered an order and opinion on March 27, 2001 denying Appellant’s motion to strike the testing, and, on April 4, 2001, the trial court entered an order again directing genetic testing. This appeal was filed on April 10, 2001. On April 11, 2001, the trial court ordered Appellant to file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Appellant filed the requested statement, and the trial court filed an opinion.[3]
¶ 6 Appellant’s first contention is that the trial court erred in refusing to apply the presumption that a child conceived or born during marriage is a child of the marriage. Specifically, Appellant contends that E.F. was conceived and born while Appellee and D.F. were married, and Ap-pellee did not overcome the presumption. In his second issue, which is intertwined with the first, Appellant contends that Ap-pellee is estopped from challenging paternity since D.F. held himself out as E.F.’s father.
¶ 7 The courts of this jurisdiction have recognized a presumption that a child born to a married woman is the child of the woman’s husband. Barnard v. Anderson, 767 A.2d 592 (Pa.Super.2001).
The presumption that a child born during the marriage is a child of the husband is always the starting point in a contest involving the parentage of a child born during coverture. Moreover, the strength of the presumption that a child born to a married woman is a child of the marriage is grounded in the Commonwealth’s interest in protecting the family unit. Although the presumption may be rebutted by clear and convincing evidence of husband’s non-access, impotency, or sterility, the presumption is irrebutable where mother, child, and husband live together as an intact family and husband assumes parental responsibility for the child.
B.S. and R.S. v. T.M., 782 A.2d 1031, 1034 (citations omitted). In Brinkley v. King, 549 Pa. 241, 701 A.2d 176 (1997) (Flaherty, J., plurality),[4] the Pennsylvania Supreme Court set forth a two-part test for courts to apply in determining paternity of a child conceived or born during a marriage. First, the presumption of paternity during marriage prevails in the absence of proof of non-access and/or impoteney. Second, the presumption of paternity prevails if the family remains intact up to and beyond the birth of the child.. See B.S. and R.S., supra. In either case, blood tests are irrelevant. Id. “[T]he policy8 underlying the presumption of paternity is the preservation of marriages. The presumption only applies in cases where that policy would be advanced by the application; otherwise it does not apply.” Barnard, 767 A.2d at 594 (quotations, quotation marks, and emphasis omitted).
¶ 8 In analyzing this case, we must first consider whether the presumption applies. Barnard, supra. If it does, then we consider whether the presumption has been rebutted. Id. If the presumption has been rebutted or is inapplicable, we will then examine Appellant’s second issue to determine whether estoppel applies. Id. See McConnell v. Berkheimer, 781 A.2d 206 (Pa.Super.2001) (indicating that the analy *362 sis indicated supra is to be applied in cases challenging paternity).
¶ 9 After reviewing the record in this case, we conclude that the trial court correctly refused to apply the presumption of paternity. Specifically, we conclude that the purpose underlying the presumption (preservation of the marriage) cannot be achieved in this case since there is no longer an intact family to preserve.
¶ 10 For example, Appellee testified that she had extramarital sexual intercourse at regular intervals with Appellant from November of 1999 to August of 2000. N.T. 12/20/00 at 8-9. During this time period, Appellee did not have sexual intercourse with any other person, including her husband, and in fact, she would leave the marital bed shortly after her husband entered the bed. N.T. 12/20/00 at 14-16, 18, 24. E.F. was conceived in December of 1999 and born in August of 2000, the time period when Appellee was engaging in sexual intercourse exclusively with Appellant. N.T. 12/20/00 at 14-16. Upon learning that she was pregnant, Appellee separated from D.F. and specifically told D.F. that he was not E.F.’s father. N.T. 12/20/00 at 10-11. Appellant was present for E.F.’s birth, while D.F. was not. N.T. 12/20/00 at 9-10. Appellee testified that she and E.F. continue to be separated from D.F. and that she has no intent to reconcile with D.F. N.T. 12/20/00 at 11.
¶ 11 D.F. testified that he knows E.F. is not his child, but that he would like to reconcile with Appellee. N.T. 12/20/00 at 18, 19. However, D.F. acknowledged that it was unlikely that reconciliation would occur, and, in that event, he did not want to pay child support because he knew E.F. was not his biological child. N.T. 12/20/00 at 19, 21. He further testified that if he and Appellee did reconcile, he would help raise E.F., but he would maintain that he was not her biological father. N.T. 12/20/00 at 22. D.F. indicated that he would never prevent Appellant from visiting E.F. because he is the biological father. N.T. 12/20/00 at 24-25.
¶ 12 Given the Supreme Court’s pronouncement that the purpose of the presumption is to protect the institution of marriage, we conclude the application of the presumption of paternity would not protect D.F. and Appellee’s marriage from the effects of disputed paternity. There is no dispute between T.L.F. and D.F. as to the identity of E.F.’s biological father, and D.F. has never believed that he is E.F.’s biological father. Furthermore, the parties have already acknowledged the extramarital affair and subsequent birth of E.F., the public separation of Appellee and D.F., and Appellee holding Appellant out as the father. “This marriage will succeed or perhaps fail with or without the application of the presumption.” B.S. and R.S., 782 A.2d at 1037. As such, we conclude that the trial court correctly found the presumption to be inapplicable.[5]
¶ 13 Having concluded that the presumption is inapplicable, we must turn to a determination of whether Appellee is estopped from asserting Appellant’s paternity in this support action. Barnard, supra.
A party may be estopped from denying the husband’s paternity of a child born [or conceived] during marriage if either husband or the wife holds the child out to be the child of the marriage.
Estoppel in paternity actions is merely the legal determination that *363 because of a person s conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child’s mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child.
Fish v. Behers, 559 Pa. 523, 528, 741 A.2d 721, 723 (1999) (citation, quotation, and quotation marks omitted).
If 14 In Jones v. Trojak, 535 Pa. 95, 634 A.2d 201 (1993), the Pennsylvania Supreme Court discussed the issue of estoppel where the mother of a child sought support from a third party, not her husband, whom she claimed was the father of the child. The Court held that:
[U]nder certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child. These estop-pel cases indicate that where the principle is operative, blood tests may be irrelevant, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted. However, the doctrine of estoppel will not apply when evidence establishes that the father failed to accept the child as his own by holding it out and/or supporting the child.
Jones, 535 Pa. at 105-106, 634 A.2d at 206 (citations omitted). See Fish, supra.
¶ 15 Here, there is no evidence that either Appellee or her husband has held the husband out as E.F.’s father. Appellee, D.F., and E.F. have never resided together as a family, D.F. is not named on the birth certificate as E.F.’s father, and there is no evidence that D.F. has been supporting E.F. financially. In fact, the record reveals that E.F.’s only contact with D.F. is in a child care capacity. That is, D.F. and Appellee testified that, as a favor to Appellee, D.F. baby-sits E.F. and their biological son approximately one or two times a week when Appellee is working. N.T. 12/20/00 at 11, 21-22. D.F. specifically testified that he has no desire to financially support E.F. in the event Appellee and he do not reconcile, that he will never prevent Appellant from visiting E.F., and that he would never maintain that he is E.F.’s father. N.T. 12/20/00 at 22.
Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that' the father [s]he has known all h[er] life is not in fact h[er] father.
Fish, 559 Pa. at 530, 741 A.2d at 724 (quotation omitted). Here, there is no evidence that D.F. has acted as E.F.’s father or that Appellee has treated D.F. as the father. As such, we conclude that the trial court correctly determined that Appellee is not estopped form seeking child support from Appellant.
¶ 16 For all of the foregoing reasons, we affirm the trial court’s order directing the parties to submit to genetic blood testing.
1117 Affirmed.
¶ 18 CAVANAUGH, J., CONCURS IN THE RESULT.

. "An order requiring blood tests to determine paternity is interlocutory but immediately appealable.” McConnell v. Berkheimer, 781 A.2d 206, 206 n. 1 (Pa.Super.2001).

. The record before us reveals that Appellant and D.F. continue to be separated, but have not legally divorced.

. On April 20, 2001, Appellant filed a petition for supersedeas, and the trial court denied the petition on May 25, 2001.

. The reasoning in Brinkley has been adopted by a majority of this Court and the Supreme Court. Fish v. Behers, 559 Pa. 523, 741 A.2d 721 (1999); B.S. and R.S., supra.

. We specifically note that the fact Appellee and D.F. are not divorced is not determinative in this case. This Court has concluded that the presumption is inapplicable in other cases where the parties were separated but not divorced. See B.S. and R.S., supra.