J-A31025-15

2016 PA Super 1

| | | |
|---|---|---|
| M.L. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| J.G.M. | | |
| | Appellee | No. 716 MDA 2015 |

Appeal from the Order Entered April 6, 2015
In the Court of Common Pleas of Berks County
Domestic Relations at No(s): 12-05529

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

OPINION BY LAZARUS, J.:                    **FILED JANUARY 04, 2016**

M.L., ("Mother"), appeals from the trial court's order granting J.G.M.'s motion for blood tests to determine paternity pursuant to 23 Pa.C.S.A. § 5104(c).[1]  J.G.M. filed a motion to quash Mother's appeal, which we deny.[2] After our review, we vacate and remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Uniform Act on Blood Tests to Determine Paternity provides:

> In any matter subject to this section in which paternity, parentage or identity of a child is a relevant fact, the court, upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests. If any party refuses to submit to the tests, the court may resolve the question of paternity, parentage or identity of a child against the party or enforce its order if the rights of others and the interests of justice so require.

(Footnote Continued Next Page)

Mother and J.G.M. were married on July 11, 2001. They are the parents of one child, a daughter, ("E.M."), born in July 2005. Mother and J.G.M. separated in December 2011, and they divorced in September 2014.

When the parties separated, J.G.M. began to question his paternity. He administered a home "DNA" test, which excluded him as E.M.'s father. Thereafter, on September 11, 2013, he filed a petition to terminate support, alleging that upon learning he might not be E.M.'s biological father, he terminated his relationship with her. Mother filed an answer, requesting the court deny J.G.M.'s petition. J.G.M. sought a psychological evaluation of E.M. for the purpose of evaluating the bond between him and E.M. The court ordered the evaluation and, following testing, J.G.M. filed a motion for blood tests to determine paternity pursuant to section 5104(c). The trial court granted the motion, but did so prior to determining whether the doctrine of paternity by estoppel applied. *See Jones v. Trojak*, 634 A.2d 201, 206 (Pa. 1993) (where paternity by estoppel principle is operative, "blood tests may well be irrelevant.").

*(Footnote Continued)* _____

23 Pa.C.S.A. § 5104(c).

[2] *See Jones v. Trojak*, 634 A.2d 201, 204 (Pa. 1993) (holding order requiring blood tests to determine paternity is interlocutory but immediately appealable). *See also T.L.F. v. D.W.T.*, 796 A.2d 358 (Pa. Super. 2002) ("This Court accepts immediate appeals from orders directing or denying genetic testing to determine paternity.").

On appeal, Mother argues that the doctrine of paternity by estoppel should apply in this case, thus precluding paternity testing under section 5104.[3]

> Paternity by estoppel "is merely the legal determination that because of a person's conduct (e.g., holding the child out as his own or supporting the child), that person, regardless of his true biological status, will not be permitted to deny parentage [.]" ***B.K.B. v. J.G.K.***, 954 A.2d 630, 634 (Pa. Super. 2008). "[T]he law will not permit a person in these situations to challenge the status that he or she has previously accepted." ***Id***. at 635 (*citing* ***John M. v. Paula T.***, 524 Pa. 306, 571 A.2d 1380, 1386 (1990)). The doctrine of paternity by estoppel seeks to protect the interests of the child.

***T.E.B. v. C.A.B.***, 74 A.3d 170, 173 (Pa. Super. 2012). In ***K.E.M. v. P.C.S.***, 38 A.3d 798 (Pa. 2012), our Supreme Court recently considered the continuing applicability of the doctrine and held that "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." ***Id.*** at 810.

In ***K.E.M.***, mother filed a support action against biological father. Biological father claimed the doctrine of paternity by estoppel applied, characterizing his relationship with the child, as compared to mother's

---

[3] Mother does not argue the presumption of paternity. Although the child was born during the marriage, the marriage is no longer intact. Therefore, the presumption of paternity is not applicable here. ***See Brinkley v. King***, 701 A.2d 176 (Pa. 1997) (presumption of paternity applies where policy of preservation of marriage would be advanced by its application; otherwise it does not apply); ***see also Fish v. Behers***, 741 A.2d 721, 723 (Pa. 1999).

husband, as insignificant. In this context, our Supreme Court addressed the viability of the doctrine of paternity by estoppel. The Court also addressed the more narrow issue of whether the trial court had properly applied the doctrine where mother's husband had held himself out as the child's father after learning that he was not the biological father and where the court was not convinced that mother's marriage to father was over and thus considered their marriage intact.

In *K.E.M.*, mother argued that an inflexible rule perpetuating a non-factual portrayal of paternity would not always serve the child's best interests. She maintained that placing the responsibility for financial support upon biological fathers, in that case, P.C.S., against whom she had filed a support action, would provide a consistent, readily identifiable source of sustenance, regardless of the child's relationship with others. The Court stated:

> [W]e believe there remains a role for paternity by estoppel in the Pennsylvania common law, in the absence of definitive legislative involvement. We recognize the intransigent difficulties in this area of the law involving social, moral, and very personal interests. Nevertheless, on the topic, subject to modest qualification, we join the sentiment expressed in an opinion authored by the late, Honorable William F. Cercone, as follows:
>
>> Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship, a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures the identity and whereabouts of the natural father, so that the child will be denied the love,

affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can prohibit him from employing the sanctions of the law to avoid the obligations which their assumed relationship would otherwise impose. The operative language of this passage centers on the best interest of the child and we are of the firm belief – in terms of common law decision making—that this remains the proper, overarching litmus, at least in the wider range of cases.

**K.E.M.**, 38 A.3d at 807-08 (quoting **Commonwealth ex rel. Gonzalez v. Andreas**, 369 A.2d 416, 419 (Pa. Super. 1976) (footnotes and citations omitted)).

The **K.E.M.** Court, noting that the determination of paternity by estoppel should be better informed according to the actual best interests of the child, reversed and remanded the case for further proceedings. The Court stated that the record was "very sparse in terms of [child's] best interests[,]" **K.E.M.**, 38 A.3d at 809, and "offers very little feel for the closeness of [child's] relationship with [mother's husband]. Correspondingly, we have no sense of the harm that would befall [child] if [mother's husband's] parental status were to be disestablished, either fully or, as some intermediate court decisions are now suggesting is permissible, partially (i.e., for purposes of support)." **Id**. The Court concluded that "paternity by estoppel continues to pertain in Pennsylvania, *but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child*." **Id**. at 809-10 (emphasis added). The Court

added that "[i]n cases involving separation and divorce, we direct that the Uniform Act on Blood Tests to Determine Paternity [Act] is now to be applied on its terms insofar as it authorizes testing." *Id*.

Thus, since the Act authorizes testing where paternity is a relevant fact, it is first necessary to determine if that is the circumstance here. Paternity is not a relevant fact where the doctrine of paternity of estoppel applies. And, as the *K.E.M.* Court emphasized, that doctrine will apply only where the record is developed with respect to the issue of the best interests of the child.[4]

_____

[4] Prior to our Supreme Court's decision in *K.E.M.*, this Court, in *R.K.J. v. S.P.K.,* 32 A.3d 841 (Pa. Super. 2011) (unpublished memorandum), affirmed a support order against S.P.K., concluding that the trial court properly applied the doctrine of paternity by estoppel to preclude S.P.K.'s request for paternity testing. There, although S.P.K. knew he was not the child's biological father, he was present at the child's birth, signed an Acknowledgement of Paternity, claimed the child on his federal taxes, lived with mother and child for six years after the child's birth and supported the child during that time. Additionally, the child referred to S.P.K. as "dad." S.P.K. filed a petition for allowance of appeal and the Supreme Court, in light of its decision in *K.E.M.*, vacated the support order and remanded to the matter to the trial court for further proceedings in accordance with K.E.M. *In re R.K.J.*, 40 A.3d 1184 (Pa. 2012). S.P.K. then filed a motion to renew his request for paternity testing, requesting that both he and "the individual named by [mother] as [the] biological father, [T.C.] be tested." *R.K.J.*, *supra* at 36, *citing* Motion to Renew Request for DNA Testing, 4/6/12. On remand, the trial court ordered an evaluation of the child by a licensed psychologist. Following a hearing, the court denied R.K.J.'s request for DNA testing and ordered that the child support order remain in effect. R.K.J. appealed, and this Court affirmed, holding that the evidence of record supported the court's application of the doctrine of paternity by estoppel because, as the trial court had observed,

*(Footnote Continued Next Page)*

Here, the trial court ordered blood testing prior to holding a hearing on the paternity issue. Although the **K.E.M.** Court acknowledged flexibility in the application of the paternity by estoppel doctrine, we interpret this as requiring a searching inquiry of the father-child relationship and the child's best interests, and not "a preliminary analysis" after ordering paternity testing. Moreover, although the court ordered a psychological evaluation to determine the nature and extent of the bond between J.G.M. and the child, **see** Order, 3/25/14, and it relied on the evaluator's finding that the bond was virtually non-existent, there is no evaluation in the certified record on appeal. We, therefore, direct the trial court to hold a hearing on the issue of paternity, in accordance with **K.E.M.**, and determine whether estoppel principles are applicable here.

_(Footnote Continued)_ ――――――――――――

The purported biological father has never been involved in [the child's] life. In contrast, S.P.K. held himself out as [child's] father for almost six years, lived with [child] and his mother in his home, told [child] that he was his father, and provided all financial support for [child]. Further, the evidence before the trial court addressed the factors set forth in **K.E.M.** as relevant to the child's best interests. In addition, the record shows that the trial court did not apply the doctrine of paternity by estoppel by rote, but considered the individual circumstances of this case, as required by **K.E.M**. **See K.E.M.**, 614 Pa. 508, 38 A.3d at 810 (holding that the doctrine of paternity by estoppel may be applied "where it can be shown, on a developed record, that it is in the best interests of the involved child[.]").

**R.K.J.**, 77 A.3d at 41.

Vacated and remanded for proceedings consistent with this decision.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2016