661 A.2d 370

**Maria ZADORI**

v.

**Thomas ZADORI, Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 1995.

Filed May 31, 1995.

Reargument Denied Aug. 11, 1995.

194

James P. Ferry, Hazleton, for appellant.

Before BECK, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

Thomas Zadori appeals from the November 30, 1993 and March 21, 1994 Orders [1] addressing, *inter alia,* the paternity of the parties' minor son and the appellant's obligation to pay spousal support.[2]

The parties married on October 5, 1989 and on November 21, 1989, appellee gave birth to a baby boy. The parties separated on August 20, 1992 and on September 15, 1992, appellant filed for custody, fearing appellee would return with their son to her native Hungary. Wife, unbeknownst to appellant, filed a complaint for child support at this same time. After the support hearing conducted September 29, 1992, an interim Order for support and visitation was entered on October 23, 1992. Exceptions taken by appellant were denied. On October 30, 1992, appellant petitioned for an Order directing the parties to submit to blood tests to establish the paternity of the child. The Domestic Relations Office suggested appellant's request be denied based on his previously filed custody action identifying himself as the father. On December 11, 1992, appellant requested a stay with regard to the support Order and a trial on the issue of paternity. On February 18, 1993, a hearing was conducted with regard to these issues, wherein appellee admitted appellant was not the child's father, and appellant testified concerning his relationship with the then four and one-half (4½) year old child. Appellant's requests were denied by Order dated April 19, 1993. Thereafter, an interim support Order was entered directing appellant to pay child and spousal support. Appel-

---

1. Upon motion filed October 31, 1994, this Court has agreed to consolidate for the purpose of appeal No. 00106 Philadelphia, 1994 and No. 01755 Philadelphia, 1994.

2. Appellee, Maria Zadori, has not filed a brief.

lant's exceptions to this Order were denied by Order dated November 30, 1993, and an appeal to this Court was subsequently filed. On March 2, 1994, an Order was entered finding appellant was the father of the minor child and directing him to pay child support. This Order was amended, sua sponte, on March 21, 1994 to include contributions for various child care costs, and to negate that portion of its Opinion which found wife had failed to preserve for the master the issue of spousal support, and award appellee $17 per week spousal support. Appellant also appealed this Order.

Father first argues the trial court erred by denying his request for HLA (human leukocyte antigen) blood testing, and by refusing to provide him with a trial on the issue of paternity as is mandated by Pa.R.C.P. 1910.15(b). Appellant argues the child was born only three or four months after the parties began sexual relations, and appellee has readily admitted appellant is not the father of her child who was conceived while she was still living in Hungary.

A child born to a married woman is presumed to be a child of the marriage and of the woman's husband. *Everett v. Anglemeyer*, 425 Pa.Super. 587, 625 A.2d 1252 (1993). This presumption of legitimacy can be overcome, however, by clear and convincing evidence husband had no access to wife during the relevant period. *Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529 (1995); *John M. v. Paula T.*, 524 Pa. 306, 571 A.2d 1380 (1990). Here, not only did appellant have no access to wife during the time the child was most likely conceived, mother repeatedly admits appellant is not the biological father. Blood tests, if permitted, would merely confirm that upon which the parties have agreed: appellant is not the biological father of now five and one-half (5½) year old Thomas. But as the trial court accurately points out, paternity and the concomitant duty to support may be established constructively. *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984). A support Order need not be based on paternity alone, but may be premised on the "existence of a parental relationship giving rise to a duty to support." *Id.* at 304, 472 A.2d at 1131. "Estoppel in paternity actions is

merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage...." *Freedman,* supra, at 591, 592, 654 A.2d at 532–533. Paternity by estoppel may be established when a putative father marries the mother, holds the child out as his own and lists his name as the father on the birth certificate. *See John M., supra,* 524 Pa.Super. 306, 571 A.2d 1380; *see also Matter of Montenegro,* 365 Pa.Super. 98, 528 A.2d 1381 (1987).

In the matter before us, appellant knew the child was not his on the date he was born. In fact, appellant avers in his brief the full term child, also named Thomas, was born only three months after the parties began sexual relations. Nevertheless, appellant agreed to amend the child's birth certificate to list himself as the birth father and, despite appellant's initial misgivings, the parties along with the child lived together as a family for almost three years after Thomas' birth. During this time, appellant admittedly fed, clothed, housed and provided for the physical, medical and emotional needs of the child. When appellee unexpectedly left the marital residence, appellant waited only one week before filing for visitation and/or custody.

As stated above, a blood test would merely affirm the fact appellant is not the biological father of Thomas. Biology aside, because the record is replete with evidence establishing appellant did indeed hold the child out as his own for almost three years prior to separation, we agree with the trial court's finding of paternity by estoppel. Since the requirements of the law to establish paternity, albeit not in biological sense, have been met, appellant is estopped from now denying paternity, and evidence of blood tests, even if conducted, would be inadmissible to disprove paternity for any purpose. *See Matter of Montenegro, supra.*

Appellant also contends the court erred by "issuing an amended Order on March 21, 1994 applying for spousal support when Maria Zadori failed to preserve the issue of spousal support by filing of exceptions to the recommended order of support which did not provide for spousal support, pursuant to

PA. Rules of Civil Procedure 1910.12(e)." (Appellant's brief at p. 13.) The Domestic Relations Officer's October 8, 1992 proposed Order addressing appellee's request for, *inter alia,* child and spousal support, directed appellant to pay child support and provide medical insurance for wife and child when available, was adopted as an interim Order on October 23, 1992. Husband filed exceptions to the interim Order while wife did not. Husband argues appellee's failure to object at that time constituted a waiver of her right to now request spousal support.

In explaining its decision to consider and grant appellee's request for spousal support, the trial court reasoned:

While it is acknowledged that MARIA ZADORI did not file her own exceptions, she was notified in writing by the Domestic Relations Section of the county court that the hearing before the master would be a *de novo* hearing.

For over a decade this court has afforded all litigants in support cases the wide latitude afforded by due process in [sic] have a *de novo* hearing before the permanent hearing officer or master. This court has intentionally chosen to allow individuals, who are frequently not represented by counsel, the opportunity to present all claims and make all arguments before the support master where, for the first time, a permanent record is made of the proceedings. This court has utilized over the years a hybrid support hearing procedure at the *de novo* hearing before the support officer which permits all issues, even those not raised by exception to the recommendation of the support officer, to be heard and considered. As such, the hybrid *de facto* hearing procedure does not cause the harsh result of waiver of issues not preserved by exception. This court has always utilized a concept that fundamental fairness and justice, and not strict adherence to procedural technicalities, must always be the goal of true justice. It was therefore, obligatory that this court enter an amended order on March 21, 1994, as was thus written.

(Slip Op., Muroski, J., 8/4/94, pp. 8–9.) We agree with the reasoning of the trial court and therefore find appellant's argument to be devoid of merit.

Based on the foregoing reasons of law and fact, we affirm the Orders of November 30, 1993 and March 21, 1994.

Orders affirmed.

BECK, J., files a concurring opinion.

BECK, Judge, concurring.

I agree with the result reached by the majority. I write separately, however, to address a recent decision by a panel of this court that might appear to support a different result.

In *Kohler v. Bleem*, 439 Pa.Super. 385, 654 A.2d 569 (1995), a panel of this court reversed the trial court's ruling that appellant, Benjamin Kohler, was estopped from denying paternity. The action concerned a child born to Mrs. Kohler during her marriage to Mr. Kohler, but after Mr. Kohler had a vasectomy and tests confirmed his sterility. Mrs. Kohler told her husband that the father of the child was a man living in Buffalo whose exact whereabouts she did not know. Despite the circumstances, Mr. Kohler accepted the child into his home, held the child out as his own, and provided support for both Mrs. Kohler and the child. Five years later, Mr. Kohler learned that the father of the child was not a stranger, but rather was a neighbor and friend, David Bleem, with whom Mrs. Kohler had a long-term affair. One year after learning of the relationship between Mrs. Kohler and Mr. Bleem, Mr. Kohler left the marital home, stating that while he could live with the idea that a stranger had fathered his wife's child, he could not tolerate the idea of living next door to the man.

Following the Kohlers' separation, Mrs. Kohler brought a child support action against Mr. Bleem. In that action, Mr. Bleem asserted that both of the Kohlers were estopped from denying Mr. Kohler's paternity of the child. The trial court agreed, finding that although it was undisputed that Mr. Bleem was the child's biological father, there was no precedent for avoiding the doctrine of paternity by estoppel and that, under Pennsylvania law, the obligation for support of the child must be placed on Mr. Kohler.

The majority of the panel of this court reversed the decision of the trial court, finding that prior Pennsylvania cases did not

address the application of paternity by estoppel to situations "where (1) clear and convincing evidence has been offered to rebut the presumption; (2) the party seeking to invoke estoppel in his or her favor is guilty of fraud or misrepresentation; *and* (3) there is no intact family." *Kohler,* 439 Pa.Super. at 397, 654 A.2d at 575 (emphasis in original). In such cases, the panel majority stated, "it defies both logic and fairness to apply equitable principles to perpetuate a pretense," *id.* at 397, 654 A.2d at 575, because the family unit which the doctrine of estoppel was developed to protect no longer exists and because "application of estoppel would punish the party that sought to do what was righteous and reward that party that has perpetrated a fraud," *id.* at 397, 654 A.2d at 575–76. The majority noted that Mr. Kohler's actions in accepting the child knowing that she was not his biological daughter would ordinarily give rise to paternity by estoppel. However, the majority found that in accepting the child Mr. Kohler was "operating under the misrepresentation that an 'unknown' man had fathered the child" and "[b]ut for this fact, Mr. Kohler indicated that he would have left his wife immediately," *id.* at 398, 654 A.2d at 576. The majority therefore concluded that Mr. Bleem, who was aware of and participated in the misrepresentation, should be precluded from utilizing equitable principles. Accordingly, the majority held, it was error to allow Mr. Bleem to invoke the doctrine of estoppel to preclude Mr. Kohler from denying paternity.

The facts of the case now before us parallel those in *Kohler* in some respects. Mr. Zadori's lack of access to Mrs. Zadori during the period in which the child was conceived and Mrs. Zadori's admissions that the child was fathered by another man constitute clear and convincing evidence to overcome the presumption that Mr. Zadori is the father. Moreover, there is an allegation of fraud or misrepresentation in that Mr. Zadori asserts that Mrs. Zadori led him to believe that the child was his up until the child's birth, when delivery of a full-term baby only three months after the parties began sexual relations made his non-paternity obvious. Finally, because the parties are separated, it appears that the Zadoris no longer have an

intact family unit in need of protection. This case thus appears to fall within the three parameters outlined by the *Kohler* majority: (1) clear and convincing evidence has been offered to rebut the presumption of paternity; (2) Mrs. Zadori, the party seeking to invoke estoppel in her favor, is guilty of fraud or misrepresentation; and (3) there is no intact family.

However, *Kohler* diverges from a long and powerful line of cases which support paternity by estoppel. *See, e.g., John M. v. Paula T.,* 524 Pa. 306, 571 A.2d 1380 (1990), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990); *Christianson v. Ely,* 390 Pa.Super. 398, 568 A.2d 961 (1990); *Seger v. Seger,* 377 Pa.Super. 391, 547 A.2d 424 (1988); *Matter of Montenegro,* 365 Pa.Super. 98, 528 A.2d 1381 (1987); *see also, Kohler v. Bleem, supra* at 401–406, 654 A.2d at 577–80 (Tamilia, J., dissenting). The public policy underlying paternity by estoppel is one which favors legitimacy and prevents an individual who has knowingly assumed the duties of parent from later renouncing those obligations, thereby leaving the child in an unprotected position. Any departure from the well-established principles of paternity by estoppel requires equally strong, countervailing considerations of public policy.

The majority in *Kohler* found, on the unique facts of that case and in light of the strong policy against permitting a party who has acted in reliance upon an intentional misrepresentation to suffer harm as a result, a sufficient basis to make an exception to the doctrine of paternity by estoppel. However, the decision in *Kohler,* departing as it does from the well-established legal principles underlying the doctrine of paternity by estoppel, must be limited to the facts of that case in order to avoid any erosion of the important public policies which led to the development of that doctrine.

On the facts of the case before us, I am not persuaded, as was the panel majority in *Kohler,* that a fraud has been committed that is so egregious as to overcome the public policies protecting the child on whose behalf support is sought. Moreover, there is no allegation in this case that Mr. Zadori relied upon Mrs. Zadori's misrepresentations in accepting and

supporting the child. Accordingly, I see no basis for granting an exception from the principles of paternity by estoppel to Mr. Zadori, the adult who knowingly and voluntarily assumed the responsibilities of parenthood of a child who was not his biological offspring.

Accordingly, I agree with the majority that Mr. Zadori's conduct estops him from denying paternity of Thomas and hence that the orders denying blood tests and ordering Mr. Zadori to pay support for Thomas should be affirmed.