**Billie MCCONNELL, Appellant,**

v.

**David E. BERKHEIMER, Appellee.**

Superior Court of Pennsylvania.

Submitted March 26, 2001.
Filed July 31, 2001.

Beverly J. Mears, Altoona, for appellant.

Russell Montgomery, Altoona, for appellee.

BEFORE HUDOCK, TODD and HESTER, JJ.

HUDOCK, J.:

¶ 1 This is an appeal from an order granting Appellee's request for blood testing in an action for paternal support.[1]  For the reasons set forth below, we vacate.

¶ 2 Appellant is the mother of a son who was born on June 13, 1999.  At the time of the child's birth, Appellant lived with Appellee, the putative father.  Mother and Appellee never married.  Mother informed Appellee before the birth of her baby that she did not believe he was the child's biological father.  However, Appellee insisted that there was a "possibility" that he might be David's biological father.  At the hearing conducted in this matter, Mother testified, "I advised [Appellee that he was not the father] before he ever even went out with me;  went with me because I was seeing him prior to that, then I wasn't seeing him any more, and then after I found out I was pregnant, I started seeing him again."  N.T., 10/2/00, at 2. Moreover, Mother unequivocally and repeatedly stated at the hearing that she was always truthful with Appellee, and she never tried to convince him that he was the boy's biological father because she knew this was not true.

¶ 3 Appellee accompanied Mother to the hospital when she went into labor and was

---

1. An order requiring blood tests to determine paternity is interlocutory but immediately appealable. *Jones v. Trojak*, 535 Pa. 95, 101, 634 A.2d 201, 204 (1993).

present for David's birth. At the hospital, he signed an acknowledgement of paternity and, at his request, the parties named the boy "David E. Berkheimer, Jr.," after Appellee. Mother explicitly testified that she wanted to give the child her own surname, but Appellee insisted that he would "do the right thing [and] that he would be a good daddy" to the boy. *Id.* at 3. Mother stated that she "begged" Appellee not to accept David as his and then abandon him. *Id.* She further stated that Appellee "took my child knowing my child was not his or there was a possibility that my child was not his, and he took him anyway." *Id.*

¶4 Appellee and Mother separated when David was approximately four months old. Nevertheless, Appellee continued to visit Mother and David on a daily basis. Appellee purchased clothing for David and took the child out with him on excursions away from Mother's home. Mother's testimony in this regard was not contested at the time of the hearing and is not challenged on appeal.

¶5 On January 24, 2000, Mother filed a complaint in support against Appellee at the behest of the Blair County Department of Welfare. A support conference was conducted on February 24, 2000. Appellee attended the support conference but was not represented by counsel. At that time, Appellee agreed to pay support for David in the amount of $50.00 per month. Appellee agreed to the entry of an order requiring him to pay the sum of $50.00 per month effective January 24, 2000, with arrearages set at $115.00.[2] The resulting trial court order was entered on March 13, 2000, and was explicitly denominated as a "final" order. Appellee did not appeal the trial court's support order concerning David, Jr.

¶6 On May 25, 2000, a petition for contempt was filed to enforce David Jr.'s right to receive child support from Appellee. Subsequently, on June 7, 2000, the trial court entered an order finding Appellee in contempt of the child support order and directing him to pay a lump sum in arrearages on David's behalf. The trial court's order explicitly notes that Appellee was represented by counsel at the time of the contempt proceeding. Appellee did not appeal from the order adjudicating him to be in contempt.

¶7 On June 22, 2000, Appellee filed a petition requesting blood testing on the grounds that he did not believe he was the father of David E. Berkheimer, Jr. Mother testified that she had no indication that Appellee was dissatisfied with his relationship with David until two months later when she received a copy of Appellee's petition to compel blood testing. She stated that Appellee had continued visiting with her and David until August, 2000. She further averred that Appellee had visited her home the day before she received her copy of the petition, and that he spent an extended period of time playing with David.[3] Appellee has not visited Mother or David since the day the petition was served.

¶8 The certified record indicates that Mother has another son, born on April 28, 2000. Mother filed a separate support

---

2. The certified record contains a copy of the trial court's order. The order itself contains a clause that states "Now, February 24, 2000 we do hereby agree to the entry of the above Order." Both Mother and Appellee ratified this clause by appending their signatures thereto. Appellee has not averred that the ratifying signature on this order is not his.

3. Mother specifically testified as follows: "He never talked to me about it. He never told me he even came out and did any thing [sic]. He even stopped and spent the day with my son while my son was running around saying, yea, daddy." N.T., 10/2/00, at 7.

action on behalf of the child, Ralph A. Berkheimer, averring that Appellee is the boy's biological father. Support for the younger boy is not at issue in the present appeal. However, the docket entries in the present case indicate that the parties entered into a stipulation for genetic testing. Although the certified record does not disclose the results of the blood tests, Mother avers that the trial court entered an order on October 5, 2000, finding that Appellee is Ralph's biological father and directing him to pay child support on Ralph's behalf. *See* Mother's Brief at 7. Appellee does not contest these averments.

¶ 9 On October 2, 2000, the trial court conducted a hearing on Appellee's petition to compel genetic testing regarding David, Jr.'s paternity.[4] The trial court entered the following order after the conclusion of the hearing:

> NOW, this 2nd day of October, 2000, the Court having conducted brief testimony this day, the request for blood testing is granted at the expense of the Petitioner [Appellee] in spite of the acknowledgement, the waiver and [Appellee's] holding himself out which normally would be estoppel, there is sufficient testimony from which to conclude that there is a serious question as to paternity.

Trial Court Order, 10/2/00. Mother's timely notice of appeal followed on October 25, 2000. The trial court did not direct Mother to file a concise statement pursuant to Rule of Appellate Procedure

4. Appellee did not testify at the October 2, 1999, hearing. However, the certified record clearly indicates he was represented by counsel at that time.

5. Despite the trial court's assertion that the reasons for the order are apparent of record, we are uncertain as to the trial court's rationale. Nevertheless, our review has not been hampered by the lack of a trial court opinion

1925(b). Furthermore, the trial court explicitly declined to file an opinion on the grounds that the reasons for its order were apparent in the order itself. *See* Pa.R.A.P. Rule 1925 Order, 10/27/00.[5]

¶ 10 In her brief, Mother has identified three separate issues for our consideration:

1. Whether the obligor is collaterally estopped from denying paternity where he did not appeal from the entry of the original Order of Support?

2. Whether the obligor is equitably estopped from denying paternity when he openly held himself out to be the father of the child, and visited with the child after the separation of the parties through the time of filing the Petition for Blood Testing?

3. Whether the obligor is barred from challenging paternity because of the Acknowledgment of Paternity filed with the Department of Public Welfare, pursuant to 23 Pa.C.S.A. [§ ] 5103, and the failure of the obligor to establish fraud, duress, or material mistake of fact by clear and convincing evidence?

Mother's Brief at 4. We shall address Mother's first two contentions together because, in essence, both claims comprise allegations that Appellee is estopped to deny paternity with regard to David, Jr.

¶ 11 Pennsylvania law defines the doctrine of "equitable estoppel" in the following terms:

> in light of the brevity of the hearing transcript and the compact size of the certified record. Thus, a remand for a trial court opinion is not warranted in this case. *See Sekol v. Delsantro,* 763 A.2d 405, 407 n. 1 (Pa.Super.2000) (remand is unnecessary in a paternity action when the certified record permits meaningful review without the guidance of the trial court's rationale).

Equitable estoppel arises when a party by acts or representation intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts.

*Bahl v. Lambert Farms, Inc.*, 773 A.2d 1256, 2001 PA Super 125, ¶ 16 (Pa.Super.2001) (quoting *Curran v. Eberharter*, 361 Pa.Super. 65, 521 A.2d 474, 479–80 (1987)). The appellate courts of Pennsylvania have upheld the concept of paternity by estoppel in "numerous circumstances" in which "a child or mother seeks child support from a purported father who has held himself out to the child and community as the father, but then attempts to deny paternity when support is sought." *Id.* In certain circumstances, a person may be estopped from challenging paternity where he has accepted a child as his own. *Brinkley v. King*, 549 Pa. 241, 248–49, 701 A.2d 176, 180 (1997). The doctrine of estoppel embodies the fiction that regardless of biology a person who has cared for a child will be deemed a "parent" of that child for legal purposes. *Id.*

¶ 12 As our Supreme Court explained in *Freedman v. McCandless,*

Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g. holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, **nor will the child's mother who has participated in this conduct be permitted to sue a third party for support,** claiming that the third party is the true father.... [T]he doctrine of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, *both*

mother and father, to their prior conduct regarding the paternity of the child.

539 Pa. 584, 591–92, 654 A.2d 529, 532–33 (1995) (bold face emphasis added; footnote and quotation marks omitted). Estoppel cases indicate that when the principle is operative, blood tests may become irrelevant because the law will not permit a person to challenge the status he has previously accepted. *Id.* at 591 n. 5, 654 A.2d at 533 n. 5 (quoting *John M. v. Paula T.*, 524 Pa. 306, 318, 571 A.2d 1380, 1386 (1990), *cert. denied,* 498 U.S. 850, 111 S.Ct. 140, 112 L.Ed.2d 107 (1990)).

¶ 13 Our Supreme Court has explained the manner in which a trial court must proceed when paternity is disputed.

[T]he essential legal analysis in these cases is twofold: first, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered. If the trier of fact finds that one or both of the parties are estopped, no blood tests will be ordered.

*Brinkley,* 549 Pa. at 250, 701 A.2d at 180.

¶ 14 The presumption of paternity does not attach when there is no marriage to preserve. *Id.* at 251, 701 A.2d at 181. *See Fish v. Behers,* 559 Pa. 523, 528, 741 A.2d 721, 723 (1999) (explaining the purpose and proper application of the "presumption of paternity"). *See also Martin v. Martin,* 710 A.2d 61, 65 (Pa.Super.1998) (the public policy behind the presumption of paternity is the preservation

of a marriage in the face of an assertion by a third party who claims that he fathered a child and that the mother's husband is not the father). Clearly, the presumption of paternity does not apply in the instant case. The parties have never been married, there is no intact family to preserve, and there is no third party challenging paternity. The next question is whether the doctrine of paternity by estoppel applies under the facts presented. *Barnard v. Anderson,* 767 A.2d 592, 594 (Pa.Super.2001).

¶ 15 We are cognizant of the fact that when allegations of fraud arise in a paternity action, an estoppel analysis must proceed in a different manner than it would without such averments. *Sekol v. Delsantro,* 763 A.2d 405, 410–11 (Pa.Super.2000). In the present case, Mother testified repeatedly and unequivocally at the hearing conducted in October of 2000 that she was always truthful with Appellee, and that she never represented to him that he was David Jr.'s biological father. Nor does Appellee aver that Mother lied to him or misrepresented David, Jr. as his biological son. Thus, the present matter raises no allegations of fraud on Mother's part.

¶ 16 The uncontroverted testimony from the hearing conducted on October 2, 2000, establishes the following. Appellee accompanied Mother to the hospital for the child's birth. Appellee not only signed the Acknowledgement of Paternity on the child's birth certificate, he insisted that the child should bear his surname. Furthermore, Appellee requested Mother to name the boy after him and call the child "David E. Berkheimer, Jr." Appellee resided with Mother and David for four months after the baby's birth. Even after Appellee moved out of Mother's home, he continued to visit Mother on a regular basis and bought presents for David, Jr. Appellee regularly took the boy on expeditions outside of Mother's home without Mother accompanying them.

¶ 17 A support hearing was conducted by the trial court, at which time Appellee voluntarily signed a stipulated support agreement. The trial court entered the support agreement on the record via an order docketed March 13, 2000. Appellee pursued no appeal from this order. Appellee continued to visit Mother and David, Jr. for five months after entry of the support order. David, Jr. continued to call Appellee "Daddy," and Appellee took no steps to inform young David that he is not the boy's father.

¶ 18 In light of all these facts, we have no hesitation in concluding that the doctrine of paternity by estoppel applies to this case and that Appellee therefore is equitably estopped from denying paternity of David E. Berkheimer, Jr. First, Appellee plainly accepted this child as his own for more than a year after the child's birth. Appellee only contested paternal status when he decided that he did not wish to provide financial support for the boy. Second, Appellee failed to make any timely effort to oppose Mother's allegations at the relevant time, that is, during the original support hearing. Finally, and most important, Appellee failed to file a timely appeal after the entry of the support order.

¶ 19 When a support order is entered in a case and the obligor fails to file a timely appeal, he is subsequently estopped from denying paternity. *Schultz v. Connelly,* 378 Pa.Super. 98, 548 A.2d 294, 296 (1988). The entry of a support order necessarily determines the issue of paternity. *Id.* Paternity is necessarily adjudicated in entering the initial support order. *Id.* at 297 n. 6. The putative father is precluded from challenging paternity even if subsequently performed blood tests exclude him as the child's biological father. *Id.,* n. 5. If no timely direct appeal is taken

**212**

from the support order, the paternity determination cannot be challenged later because it has been established as a matter of law. *Id.*, 548 A.2d at 297.

¶ 20 There is no indication in the certified record that Appellee was denied a full and fair opportunity to contest the support order at the hearing conducted in the matter. Nor is there any indication that he was prevented from filing an appeal thereafter. All that is necessary in a child support case is a full and fair opportunity to litigate the matter on its merits. *Id.* The Superior Court will not disturb a prior final determination of an issue merely because a party has failed to take full advantage of his rights. *Id.* The fact that Appellee was not represented by counsel at the support hearing does not change matters. "When entering into a support order, an individual does not have a right to counsel." *Id.* Allegations of duress are also unavailing in a collateral proceeding, because such averments could have been raised on direct appeal from the support order. *Id.*

¶ 21 Mother's third issue comprises the claim that section 5103 of Title 23 precludes Appellee from rescinding his acknowledgement of paternity at this time. We agree. Under this statutory provision, a voluntarily signed acknowledgment of paternity constitutes a legal finding of paternity, subject to the right of the signatory to rescind the acknowledgment within the earlier of the following:

    (i) sixty days; or

    (ii) the date of an administrative or judicial proceeding relating to the child, including, but not limited to, a domestic relations section conference or a proceeding to establish a support order in which the signatory is a party.

23 Pa.C.S.A. § 5103(g)(1)(i) and (ii). As discussed above, Appellee did not rescind the acknowledgment of paternity within sixty days of its issuance, nor did he challenge paternity at the support conference conducted in February of 2000. Furthermore, Appellee signified his acquiescence to the stipulated support order filed following the conference by signing the order prior to its entry. Moreover, Appellee did not file a timely appeal from the stipulated support order.

¶ 22 After the expiration of the sixty day period set by subsection 5103(g)(1)(i), an acknowledgment of paternity may be challenged on the basis of fraud, duress, or material mistake of fact. *Id.* § 5103(g)(2). Fraud, duress, or material mistake of fact must be established through clear and convincing evidence. *Id.* The certified record in the present case contains no evidence whatsoever that possibly could support such a claim. ·

¶ 23 In light of the above, we conclude that it was legally incorrect for the trial court to order blood tests in this matter. *See Brinkley*, 549 Pa. at 250, 701 A.2d at 180 (blood tests will not be ordered when paternity by estoppel has been established). We therefore vacate the order of October 2, 2000, requiring blood testing.

¶ 24 Order vacated. Jurisdiction relinquished.