**Betsy A. LYNN, Appellant**

v.

**Edward POWELL and Daniel Mark Lynn, Appellees**

Superior Court of Pennsylvania.

Submitted Aug. 12, 2002.
Filed Oct. 15, 2002.

Tammi L. Elkin, North East, for appellant.

Edward Powell, appellee, pro se.

Daniel M. Lynn, appellee, pro se.

Before: STEVENS, BOWES, and OLSZEWSKI, JJ.

OLSZEWSKI, J:

¶ 1 Betsy A. Lynn appeals from the lower court's February 15, 2002, order denying her motion to adjudicate presumption of paternity. For the reasons set forth below, we affirm.

¶ 2 Daniel Mark Lynn ("husband") and Betsy A. Lynn ("wife") married on June 1, 1990. After nine years, the couple separated in the summer of 1999. While separated, wife engaged in a sexual relationship with Edward Powell.[1]

¶ 3 Husband and wife subsequently reconciled in September 1999. In October 1999, wife learned that she was pregnant, but was unsure of the father. Sometime in February 2000, wife concluded that Mr. Powell was the father. At that point, she revealed her affair to husband. In spite of wife's infidelity, the couple continued their marriage, and wife gave birth to Bryce Patrick Lynn on April 21, 2000.

¶ 4 Husband has accepted Bryce as his own since learning of wife's pregnancy. See N.T., 1/25/02, at 32. Husband was present in the delivery room during his birth and his name appears on Bryce's birth certificate. Id. Bryce uses husband's surname and receives health insurance under husband's policy. Id. Husband and wife also plan to claim Bryce on their income tax returns. Id. While at the same time, Mr. Powell has expressed no interest in Bryce.

¶ 5 There is no dispute that husband did not father Bryce. Husband and wife both testified at the January 25, 2002, paternity hearing that they did not engage in sexual activity with each other during their separation. Additionally, a DNA test performed in June 2000 showed, unequivocal-ly, that husband was not Bryce's biological father. Husband and wife's story also appeared on ABC–TV's national program "Primetime Live" and, in reiterating their story on national television, the couple pronounced that husband was not Bryce's father.

¶ 6 Wife subsequently filed a motion for paternity in the Erie County Court of Common Pleas on November 29, 2001. Wife sought to overcome the presumption of paternity and the application of the doctrine of estoppel in order to pursue a child support claim against Mr. Powell. Trial Court Opinion and Order, 2/15/02, at 2. The trial court denied wife's motion on February 15, 2002, based on the doctrine of estoppel. This timely appeal followed.

¶ 7 Wife raises the following issue for our review:

> Does the doctrine of estoppel prevent the husband from denying his paternity despite the fact that appellant's husband is not the child's biological father, and has not held himself to be the biological father, but has assisted in the child's care?

Brief for Appellant at 9 (capitalization omitted).

¶ 8 The doctrine of estoppel in paternity actions is a legal determination based on a person's conduct. *McConnell v. Berkheimer*, 781 A.2d 206, 210 (Pa.Super.2001). We do not allow a person to deny "parentage" of a child, regardless of biological status, if that person holds the child out as his own and provides support. *Id.* When such circumstances exist, we will also not allow a child's mother to sue a third party for support based on biological status. *Id.* Plainly, the law does not allow a person to challenge his role as a parent

---

1. Appellee Edward Powell has not filed a brief with this Court.

once he has accepted it, even with contrary DNA and blood tests. *Id.*

¶ 9 In analyzing such a case we must: (1) consider whether the presumption of paternity applies, and, if so, whether it has been rebutted; (2) if the presumption does not apply or has been rebutted, we then determine whether estoppel applies. *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176, 180 (1997).

■ ¶ 10 Our Supreme Court has written extensively on the presumption of paternity, noting:

generally, a child conceived or born during the marriage is presumed to be the child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access ... to the mother or the presumptive father was physically incapable of procreation at the time of conception.

*Id.* at 179 (footnote omitted). The presumption of paternity's policy aim is the preservation of marriage. *B.S. v. T.M.,* 782 A.2d 1031, 1035 (Pa.Super.2001) (citing *Strauser v. Stahr,* 556 Pa. 83, 726 A.2d 1052, 1055 (1999)). As such, the presumption is applied only in cases where its application would advance the preservation of marriage. *Strauser,* 726 A.2d at 1055. It is, therefore, not applied in cases where it does not advance that goal. *Id.*

■ ¶ 11 Instantly, we agree with the trial court that application of the presumption in this case would be futile. Wife has consistently acknowledged that Mr. Powell fathered Bryce. In addition, the couple had a personal DNA test performed in June 2000, which unambiguously excluded husband as Bryce's father. Bryce, therefore, can not be presumed a child of husband and wife's marriage. Moreover, the couple testified that regardless of the outcome of these proceedings their marriage would continue. Application of the presumption in this case will not act to further or protect the marriage. We believe, based on our holding in *B.S. v. T.S.,* the trial court was correct in not applying the presumption in this case. 782 A.2d 1031 (Pa.Super.2001).

■ ¶ 12 Since we have determined that the presumption does not apply, we must now determine if estoppel applies. *Brinkley,* 701 A.2d at 180. Estoppel applies to a paternity challenge where a party, by his conduct, has clearly accepted and supported the child. *Id.*

■ ¶ 13 We agree with the trial court that husband and wife are estopped from asserting a paternity claim. Clearly, the couple has accepted husband as the "father" of Bryce. In her brief, Wife emphasizes the fact that Mr. Powell is Bryce's biological father and not husband. It is undisputed that husband did not father Bryce. Based on the facts, however, we believe husband has held himself out as Bryce's natural father by accepting traditional fatherly responsibilities; namely, appearing on Bryce's birth certificate, Bryce using husband's surname, affording Bryce health insurance coverage and most importantly, offering day-to-day care, love and shelter. In essence, husband's conduct is conclusive of his acceptance of his role as Bryce's father.

¶ 14 Allowing wife now to assert a paternity claim against Mr. Powell would run contrary to the spirit of the law, and the best interest of the child. Husband acted in an honorable manner in accepting and supporting Bryce as his own child; the couple should not now seek financial gain.

¶ 15 Order affirmed.

¶ 16 Dissenting Opinion by BOWES, J.

BOWES, J., Dissenting:

¶ 1 The sole issue raised by Appellant is whether the doctrine of estoppel applies herein. Since I disagree with its application to the unique facts of this case, I respectfully dissent.

¶ 2 In a paternity case, estoppel is:

the legal determination that because of a person's conduct (*e.g.*, holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father.

*Fish v. Behers,* 559 Pa. 523, 528, 741 A.2d 721, 723 (1999). In paternity actions, the doctrine of estoppel "is aimed at achieving fairness as between the parties by holding them, both mother and father, to their prior conduct regarding the paternity of the child." *Freedman v. McCandless,* 539 Pa. 584, 591–92, 654 A.2d 529, 532–33 (1995).

¶ 3 The unrebutted testimony at the hearing on January 25, 2002, established that Betsy Lynn ("Wife") and Daniel Lynn ("Husband") never held out Wife's youngest child, Bryce Lynn, as the child of Husband. The record reveals that Husband and Wife, married since 1990, were separated July through September 1999, and during that time, they did not have sexual relations with each other. Wife admitted to having sexual relations with a third party, Edward Powell, during that three-month period, and she conceived Bryce during that time. N.T., 1/25/02, at 5–6. Upon reconciliation of Husband and Wife in the fall of 1999, Wife revealed her pregnancy to Husband, and admitted what he already

surmised, that Husband was not the father of the child. *Id.* at 8, 30.

¶ 4 Bryce was born on April 21, 2000. In July 2000, as soon as Wife recovered from the Cesarean birth, Husband and Wife pursued genetic testing to establish formally that Husband was not Bryce's biological father. The report from that DNA testing, dated July 26, 2000, established unequivocally that Husband is not Bryce's biological father. The report was admitted into evidence at the hearing without objection.[2] *Id.* at 12, 17. Husband and Wife testified that they did not formally receive the results until May 2001 because it took that long for them to pay the $750 fee for the tests. *Id.* at 22.

¶ 5 Husband and Wife also appeared on a national television program, "Primetime," in a segment taped during the summer of 2001 that aired in December 2001, in which they publicly announced that Husband was not the biological father of Bryce. *Id.* at 23–25, 28. They have told their family and friends that Bryce is not Husband's child, as well as informing their other children. *Id.* at 13, 24. As soon as Bryce is old enough to understand, Husband and Wife plan to tell Bryce that Husband is not his father. *Id.* at 27. As Wife testified, "The community knows [that Husband is not Bryce's biological father.] It's not going to be anything that can ever come back and hurt him later in life." *Id.* at 28.

¶ 6 While acknowledging that "[i]t is undisputed that husband did not father Bryce[,]" Majority Opinion at 930, the majority concludes that Husband has held himself out as Bryce's father "by accepting traditional fatherly responsibilities; namely, appearing on Bryce's birth certificate, Bryce using husband's surname, affording Bryce health insurance coverage and most

---

**2.** The putative father, Edward Powell, appeared at the hearing *pro se.*

importantly, offering day-to-day care, love and shelter." *Id.* For the following reasons, I reach the opposite conclusion.

¶ 7 First, there is no testimony in the record concerning Husband's provision of day-to-day care, love, and shelter. Nevertheless, it is highly likely that a relationship between Husband and Bryce is evolving because they reside together in a familial setting. However, even if such testimony had been elicited, due to the peculiar facts of this case, it would not persuade me that estoppel applies herein. The evidence clearly establishes that Husband has pursued the continuation of this marriage with the knowledge, from the beginning, that his wife had sexual relations with another man during a period of separation. Thus, he necessarily participates in the maintenance of the household since he and Wife have three other children together who require care. *Id.* at 5.

¶ 8 From the moment they decided to reunite, Husband and Wife have done everything in their power to establish the rightful parentage of Bryce. They have disclosed to family and friends, including Bryce's siblings, that Husband is not Bryce's father, and they intend to tell Bryce this fact when he is able to understand it. The fact that Husband has not banned Bryce from the house or refused to acknowledge the child's existence does not persuade me that Husband's actions compel the applicability of estoppel. Under the circumstances, he has done all he can to deny paternity while striving to keep his family intact.

¶ 9 I believe a parallel exists between the instant case and *T.L.F. v. D.W.T.*, 796 A.2d 358 (Pa.Super.2002), where this Court held that T.L.F., the mother therein, was not estopped from seeking child support from the putative father. While married, T.L.F. conceived a child, E.F., by a man not her husband. However, unlike in the instant case, the marriage did not withstand the birth of the child, and the parties, though not divorced, remain separated. From the outset, T.L.F. told her husband, D.F., that he was not E.F.'s father. D.F. baby-sat E.F., along with his biological child with T.L.F., while T.L.F. was working, and we presumed that while he was caring for E.F., he performed the duties that such caretaking required. However, he did not hold himself out as the father of the child, similar to Husband herein. Although D.F. regularly cared for E.F., we concluded that "there is no evidence that D.F. has acted as E.F.'s father or that [T.L.F.] has treated D.F. as the father." *Id.*, 796 A.2d at 363. As a result, this Court upheld the trial court's determination that T.L.F. was not estopped from seeking child support from the putative father.

¶ 10 Our Supreme Court has stated that estoppel, in a paternity case,

> Is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

*Fish v. Behers, supra*, 559 Pa. at 530, 741 A.2d at 724 (quoting *Brinkley v. King*, 549 Pa. 241, 249–50, 701 A.2d 176, 180) (Plurality). In this case, since Husband and Wife have decided to maintain their marriage and therefore, their family, there is nothing more Husband could have done to deny Bryce's parentage, while continuing to perform the duties that right and justice presume he must do under the circumstances. Husband has not held himself out as the father of Bryce nor has his conduct led others to conclude that he is the biological father of Bryce. Bryce will

not grow up believing that Husband is his father, only to learn at some later date that he is the son of Edward Powell. Thus, the public policy consideration upon which estoppel is based, as reiterated in *Fish, supra,* is not present in this case. Bryce will not have to suffer the potentially damaging trauma resulting from learning that his father is not, in fact, his father, since he is growing up with that knowledge. "Public policy demands that children have the right to certainty in their relationships with their parents." *Tregoning v. Wiltschek,* 782 A.2d 1001, 1004 (Pa.Super.2001). Husband and Wife have done all they could to ensure Bryce's certainty herein.

¶ 11 Recent cases in which the court concluded that the doctrine of estoppel applied based upon the actions of the husband, or former husband, involved the potential for the child's reliance upon the implications resulting from the husband's behavior that he was the child's father. For example, in *Fish v. Behers, supra,* the husband did not know for the first three years that the child born of his marriage was not his biological son, and he treated the boy as his son. Although the husband eventually came to learn the truth, the child continued to believe the husband is his father, and the husband and wife continued to hold the husband out to the community as the child's father.

¶ 12 In *Weidman v. Weidman,* 808 A.2d 576 (Pa.Super. 2002), we concluded that the husband's actions, including tattooing the child's name on his chest along with the names of other biological children, and the extent of his involvement in first two years of the child's life, precluded the husband from denying paternity when he subsequently decided that he no longer wanted to support the child.

¶ 13 The key point, in my view, is that the doctrine of estoppel operates to pre-clude a person from challenging the status he previously accepted. *Freedman v. McCandless, supra,* 539 Pa. at 591 n. 5, 654 A.2d at 533 n. 5. There can be no question that Husband herein never accepted his status as Bryce's father, either explicitly or implicitly. He simply chose to maintain his marriage despite the knowledge that his wife had a child by another man. Due to the circumstances of this case, I believe this matter should be reversed and the law should recognize what Husband, Wife, their family, and their community have done for the past two years: acknowledge that Husband is not the biological father of Bryce.