MOORE, Judge.
G.R.B. ("the wife") appeals from a judgment entered by the Clay Circuit Court ("the trial court") divorcing her from L.J.B. ("the husband") to the extent that the trial court determined that the husband is not the father of G.P.B. ("the child"). We reverse the trial court's judgment.
Procedural History
On January 18, 2017, the husband filed a complaint seeking a divorce from the wife. He alleged, among other things, that he had signed the child's birth certificate as the father of the child but that he was not the child's biological father. The husband requested that the trial court order DNA testing to determine the child's paternity. On January 30, 2017, the wife answered and counterclaimed for a divorce. She alleged that the husband had had his name placed on the child's birth certificate with knowledge that he was not the child's biological father, that the husband "[had] chose[n] to act fully in the role of and [to] be the child's father in every way after acknowledging the child as his own at the child's birth," that the husband and the child had "developed a father-child relationship for near[ly] ten years," and that "[i]rreparable harm may result to the child if [the husband] is successfully disproved as the child's father." On February 2, 2017, the husband answered the wife's counterclaim.
After a trial, the trial court entered a judgment on June 20, 2017, divorcing the parties and providing, in pertinent part:
"It is undisputed that the [husband] is not the biological father of the ... child, however he signed an Acknowledgment of Paternity at her birth. The child's biological mother is [R.H.,] the [wife's daughter from a previous relationship] and the [husband's] stepdaughter. Both parties testified that [R.H.] was addicted to drugs at the time of the birth of the ... child and [that the husband had] signed the acknowledgment in an effort to keep the child from being placed in foster care. The child is now 11 years old and has not seen the [husband] in approximately two years.
*835 "The [husband] filed for divorce in this matter and has asked the Court to issue a ruling declaring him not to be the legal father of the ... child. Caselaw supports the [husband's] right to contest paternity of the ... child. However, in response the [wife] has asserted ... § 26-17-608 of the Alabama Code [1975,] which serves to Estopp [sic] the denial of paternity based on several factors enumerated in the statute. Of those factors contained in the statute, the Court was concerned most with the nature and relationship of the child and the [husband].
"The Court heard extensive testimony regarding this factor. The parties both testified that [the child] was told that the [husband] is not her father but disputed at what time she was made aware of this. Additionally, both testified the child was aware of who her biological mother is and had known from an early age.
"The Court finds from the testimony that the [husband] was not held out to be [the child's] father and in fact the [wife] testified that she made a point to let people know he was not. Additionally, both parties testified that [R.H.] has been actively involved in [the child's] life. It appears from the testimony that the parentage of the child was not a secret to anyone and therefore will not adversely affect the ... child.
"Based upon the pleadings and testimony given it is ORDERED, ADJUDGED AND DECREED as follows[:]
"....
"5. That the [husband] is not the legal father of the ... child, ... and therefore shall not be ordered or required to pay child support to the [wife]."
On July 18, 2017, the wife filed a postjudgment motion. That motion was denied on July 20, 2017. On August 28, 2017, the wife filed her notice of appeal.
Facts
The husband and the wife married on October 7, 1995, and no biological children were born of their marriage.[1] On June 20, 2004, the wife's daughter from a previous relationship, R.H., gave birth to the child. According to the parties, R.H. was using drugs at the time of the child's birth, and the parties had been concerned that the Department of Human Resources might place the child in foster care. It is undisputed that, because of the parties' concerns, the husband and R.H. had executed a form, which was made available by the Alabama Center for Health Statistics and entitled "State of Alabama Affidavit of Paternity," representing that the husband was the father of the child. The husband admitted that he and the wife had taken the child into their home and that he and R.H. had subsequently consented to the wife's adopting the child. Both the husband and the wife testified that the child knows that R.H. is her biological mother and that R.H. has been involved in the child's life, albeit not consistently. Neither the husband nor the wife had knowledge of the identity of the child's biological father.
The husband admitted that he had held himself out to be the child's father, had attended school functions as the child's father, had supported the child, and had taken the child fishing. The child bears the husband's surname. The husband testified that the child is his child for all practical *836 purposes and that she has called him "daddy" her entire life. It is undisputed, however, that the husband and the wife had made it known to others that the husband is not the child's biological father because, they said, they did not want people to think that the husband had had sex with R.H. The husband also testified that he had informed the child that he is not her biological father. The wife testified that the child had found out that the husband is not her biological father right before the husband moved out of the marital residence, which was approximately two years before the trial.
It is undisputed that, at the time of the trial, the husband had not visited with the child since he had moved out of the marital residence. In fact, the wife had requested a protection-from-abuse order, to which the husband had consented. Pursuant to that order, the husband had not been allowed to be near the child or the wife.
The husband testified that he did not think he should be required to support the child since he is not her biological father. He specifically stated:
"She's not my biological child. I done [sic] this to keep the child with her family instead of being threw [sic] in a system and lost in a system. Yes, I've been a father to the child when nobody else has. But it's not right for me to have to pay for another woman and another man's mistakes. They are the ones that laid down, got pregnant. And I'm going to have to pay for it the rest of my life? It's not right; not to me."
The husband admitted, however, that he had not taken any steps to withdraw his acknowledgment of paternity of the child until he commenced the divorce action.
The wife testified that she receives Social Security disability benefits in the amount of $735 per month. According to the wife, after the husband had moved out of the marital residence, she had been unable to pay the monthly mortgage payment, and, therefore, the mortgage had been foreclosed upon. The wife testified that, at the time of the trial, she and the child were residing in public housing.
Discussion
On appeal, the wife argues that the trial court erred in concluding that the husband was not estopped from denying his paternity of the child. Specifically, she argues that the trial court failed to apply the statutory factors in § 26-17-608, Ala. Code 1975, in making its determination and, instead, relied upon factors that are irrelevant to the determination.[2] Section 26-17-608 provides, in pertinent part:
"(a) In a proceeding to adjudicate the parentage of a child having a presumed father or to challenge the paternity of a child having an acknowledged father, the court may deny a complaint seeking to disprove paternity if the court determines that:
"(1) the conduct of the mother or the presumed or acknowledged father *837 estops that party from denying parentage; and
"(2) it would be inequitable to disprove the father-child relationship between the child and the presumed or acknowledged father.
"(b) When determining whether to deny the complaint, the court shall consider the following factors:
"(1) the length of time between the proceeding to adjudicate parentage and the time that the presumed or acknowledged father was placed on notice that he might not be the genetic father;
"(2) the length of time during which the presumed or acknowledged father has assumed the role of father of the child;
"(3) the facts surrounding the presumed or acknowledged father's discovery of his possible nonpaternity;
"(4) the nature of the relationship between the child and the presumed or acknowledged father;
"(5) the age of the child;
"(6) the harm that may result to the child if presumed or acknowledged paternity is successfully disproved;
"(7) the nature of the relationship between the child and any alleged father;
"(8) the extent to which the passage of time reduces the chances of establishing the paternity of another man and a child-support obligation in favor of the child; and
"(9) other factors that may affect the equities arising from the disruption of the father-child relationship between the child and the presumed or acknowledged father or the chance of other harm to the child."
The Uniform Comment to § 26-17-608 states, in pertinent part:
"This section incorporates the doctrine of paternity by estoppel, which extends equally to a child with a presumed father or an acknowledged father. In appropriate circumstances, the court may deny genetic testing and find the presumed or acknowledged father to be the father of the child. The most common situation in which estoppel should be applied arises when a man knows that a child is not, or may not be, his genetic child, but the man has affirmatively accepted his role as child's father and both the mother and the child have relied on that acceptance."[3]
In its judgment, the trial court stated that it had heavily relied on the factor concerning the "nature and relationship of the child and the alleged father." It then noted that the child knows who her biological mother is and also knows that the husband is not her biological father. It further concluded that the husband "was not held out to be [the child's] father and in fact the [wife] testified that she made a point to let people know he was not [the child's biological father]." It finally concluded that, because the fact that the husband is not the child's biological father is not a secret, the child would not be harmed by a determination that the husband is not her father.
The trial court's reliance on the fact that it is known that the husband is not the child's biological father in its consideration of the "nature and relationship of the child and the alleged father" is *838 misplaced. Our supreme court has stated: "[T]he United States Supreme Court and this Court have held that biological ties are not as important as parent-child relationships that give young children emotional stability." Ex parte T.J., 89 So.3d 744, 747 (Ala. 2012). Regardless of whether a child is aware of the lack of a biological connection with his or her acknowledged or presumed father, that child is still subject to potential harm from allowing an acknowledged or presumed father to disprove his paternity; indeed, a child stands to lose a parent-child relationship and the emotional and financial support and stability associated therewith. The actual parent-child relationship, not simply whether a child is aware of the lack of a biological connection with his or her acknowledged or presumed father, should be the focus of the consideration regarding the "nature of the relationship between the child and the presumed or acknowledged father." § 26-16-608(b)(4).
Although § 26-17-608 has not yet been closely examined by an Alabama appellate court, the Superior Court of Pennsylvania analyzed the issue of "paternity by estoppel" in a similar case cited by the wife in her brief to this court. See Zadori v. Zadori, 443 Pa. Super. 192, 661 A.2d 370 (1995). In Zadori, the evidence indicated that Thomas Zadori had known that the child at issue in that case was not his biological child from the time the child was born. 443 Pa. Super. at 196, 661 A.2d at 372. Notwithstanding the lack of a biological connection, Thomas had "agreed to amend the child's birth certificate to list himself as the birth father," had lived with the child and the child's mother for almost three years, and had "provided for the physical, medical and emotional needs of the child." Zadori, 443 Pa. Super. at 196, 661 A.2d at 373. The Superior Court of Pennsylvania explained: " 'Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage....' " Zadori, 443 Pa. Super. at 195-96, 661 A.2d at 372 (quoting Freedman v. McCandless, 539 Pa. 584, 591-92, 654 A.2d 529, 532-33 (1995) ). The court held that, despite the fact that Thomas had known that he was not the child's biological father, because of his actions in establishing a parent-child relationship, the trial court had correctly determined that Thomas was estopped from denying paternity of the child. Zadori, 443 Pa. Super. at 196, 661 A.2d at 373.
In another Pennsylvania case, Lynn v. Powell, 809 A.2d 927 (Pa. Super. Ct. 2002), the facts indicated that, although the wife and the husband were married when the child at issue was born, the wife and the husband had both known that the husband was not the father of the child. The evidence indicated that the husband and the wife had appeared on "ABC-TV's national program 'Primetime Live' and, in reiterating their story on national television, [had] pronounced that husband was not [the child's] father." Lynn, 809 A.2d at 929. However, despite the husband's knowledge that he was not the biological father of the child, the husband was listed on the child's birth certificate and the child used the husband's surname; furthermore, the husband had provided health-insurance coverage and "day-to-day care, love and shelter" for the child. Lynn, 809 A.2d at 930. The Superior Court of Pennsylvania found that the "husband's conduct is conclusive of his acceptance of his role as [the child's] father," and, thus, it held, he and the wife were estopped from denying his paternity of the child Id.
We conclude that the reasoning in the above-cited Pennsylvania cases is in line with this state's policy of considering the actual parent-child relationship as opposed *839 to simply the knowledge of the lack of a biological connection in determining issues of paternity. Therefore, we find those cases to be additional support for our conclusion that the actual parent-child relationship should be the focus of the consideration regarding the "nature of the relationship between the child and the presumed or acknowledged father." § 26-17-608(b)(4).
To be sure, courts in other states have held that the doctrine of paternity by estoppel could not be applied when the child at issue was aware that the presumed or acknowledged father was not the child's biological father. See, e.g., J.R.A. v. G.D.A., 314 S.W.3d 764, 768-69 (Ky. Ct. App. 2010) (declining to apply estoppel when the child knew that J.R.A. was not her biological father and J.R.A. had "made no material misrepresentation to [the child]"); and T.P.D. v. A.C.D., 981 P.2d 116, 120 (Alaska 1999) (noting that the element of reliance to establish equitable estoppel had not been met when the child knew that the presumed father was not the child's biological father).[4] We note, however, that J.R.A. and T.P.D. were decided using the principles of equitable estoppel, not the factors and principles set forth in this state's statutory law.
In Alabama, the factors required to be considered and set forth by our legislature in § 26-17-608 do not require that the child's knowledge of the lack of a biological connection be considered whatsoever; indeed, the factors focus on such considerations as how long the presumed or acknowledged father "assumed the role of father of the child" and "the nature of the relationship between the child and the presumed or acknowledged father." § 26-17-608(b)(2) and (4) (emphasis added). As explained previously, the consideration of "the nature of the relationship" should be focused on the actual parent-child relationship and not whether a child has knowledge that there is no biological connection between him or her and the presumed or acknowledged father. Considering the plain language of § 26-17-608 and this state's policy of protecting the actual parent-child relationship, we conclude that the reasoning in J.R.A. and T.P.D. are inapplicable here.
Because we conclude that the trial court misapplied § 26-17-608 in this case, we reverse the trial court's judgment to the extent that it determined that the husband is not the father of the child. We remand this cause for the trial court to apply the factors in § 26-17-608 in light of the principles set forth in this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.

During the marriage, the parties adopted V.M.B., who was 16 years old at the time of the trial. V.M.B. is also the biological daughter of R.H., and she was residing with R.H. at the time of the trial. There were no issues regarding V.M.B. raised at the trial, and no issues regarding V.M.B. have been raised on appeal.

We note that the trial court concluded that the husband had signed an "Acknowledgment of Paternity." The husband admitted that he had signed a document acknowledging his paternity of the child, and neither party raised the issue whether the "State of Alabama Affidavit of Paternity" is a valid acknowledgment under Ala. Code 1975, § 26-17-302. "On appeal, this court is limited to considering the case in the context and under the theories upon which it was tried in the proceedings below." Grieser v. Advanced Disposal Servs. Alabama, LLC, 252 So.3d 664, 671 (Ala. Civ. App. 2017) ; see also Vulcraft, Inc. v. Wilbanks, 54 Ala. App. 393, 395, 309 So.2d 105, 106 (Civ. 1975). Therefore, on appeal we do not examine the issue of the validity of the acknowledgment or the issue whether the husband was the presumed father of the child under Ala. Code 1975, § 26-17-204.

We further note that the Uniform Comment to § 26-17-204, Ala. Code 1975, states that the principles in § 26-17-608 may be used "in appropriate circumstances to deny requests for genetic testing in the interests of preserving a child's ties to the presumed or acknowledged father who openly held himself out as the child's father regardless of whether he is in fact the genetic father."

Specifically, in T.P.D., the Supreme Court of Alaska stated that, in order to establish equitable estoppel in that "paternity disestablishment case[ ]," the elements of representation and reasonable reliance would be satisfied if
"(1) the husband [had] represented directly or implicitly to the child that he is the father, (2) the husband [had] intended his representation to be accepted and acted on by the child, (3) the child [had] relied on the representation and treated the husband as a father and gave his love and affection to the husband, and (4) the child was ignorant of the true facts."
981 P.2d at 119.