639 A.2d 830

**Renee JEFFERSON**

v.

**Tyrone PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 7, 1994.

Filed April 5, 1994.

652

Valerie I. Harrison, Philadelphia, for appellant.

Michael A. Shore, Philadelphia, for appellee.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

Appellant, Tyrone Perry, appeals from the decision of the Philadelphia Court of Common Pleas ordering him to pay support for Tyrone Kyle Jefferson Perry and determining that he was estopped from denying paternity of the child. We reverse.

Renee Jefferson (hereinafter also referred to as "Mother") filed a complaint for child support for Tyrone Jefferson Perry, born out of wedlock on July 23, 1987, and Dorcas Renee Jefferson Perry, born November 11, 1988, wherein she sought to establish that Mr. Perry was the putative father of the children. At a May 6, 1992 pretrial conference, the parties agreed to blood testing for the purpose of establishing paternity. Blood tests were conducted on May 20, 1992. The blood studies established that there was a 99.16% probability that appellant is the father of Dorcas Perry, but excluded appellant as the father of Tyrone. Nonetheless, the common pleas court

directed that a trial with respect to the issue of appellant's paternity be held. On July 16, 1992, following the testimony of the parties, the Honorable John L. Braxton determined that appellant was estopped from denying that he was Tyrone's father. Then, without any evidence regarding either party's income or expenses with the exception of the erroneous representation by Mother's counsel that appellant recently had purchased a 1992 Lincoln Town Car, the common pleas court entered a temporary order of support. The order awarded support of $50.00 per week per child, attached appellant's wages, directed appellant to pay for the blood studies, including the one which excluded him as the father, and set the case for a hearing before a permanent hearing officer.

A hearing scheduled for September 15, 1992, was rescheduled to enable Mother to obtain new counsel. Finally, on October 22, 1992, a support hearing was held before a permanent hearing officer. The common pleas court denied appellant's motion for post-trial relief, and on November 16, 1992, entered an order directing appellant to pay $237.00 bi-weekly for the support of Tyrone and Dorcas, $10.00 bi-weekly on arrearages, and $340.00 for blood studies, and directing appellant to provide health care coverage through his employment. It also amended the wage attachment to reflect the higher amounts. This appeal followed.

The evidence at the July 16, 1992 hearing established that beginning in 1986 and for the ensuing three or four years, the parties had an intermittent relationship. Mother testified that in November, 1986, when the parties were not involved with each other, she learned she was pregnant. She identified the father of the child as Albert Charles Henry. Notes of Testimony ("N.T."), 7/16/92, at 17. Notwithstanding this fact, Mother testified that appellant telephoned her, having heard that she was pregnant. Mother claimed that she told appellant he was not the father of the child, but appellant told her "he would be the father of the baby, whether it was his or not." *Id.* at 8–9. She stated that she was going to put the child up for adoption, but based upon appellant's representation, she chose to keep the baby. *Id.* Mother further testi-

fied that appellant insisted that she name the child after him. The parties never have married and never have lived together. Mother also acknowledged at the hearing that appellant had not stayed at her house for one and one-half years.

Appellant testified as follows. Mother told him he was the father of the child and never told him that he was not. *Id.* at 19. He first learned that Tyrone was not his son when the blood studies came back. However, he acknowledged that since he and appellee had stopped seeing each other, appellee's friends told him that appellee had begun saying that appellant was not the father. *Id.* at 19, 24. Appellant stated that the parties indeed had discussed what to name the child, that it was Mother's idea to name the baby after him, and that he acquiesced, based on Mother's representation that the child was his. *Id.* at 28. He also admitted that he placed the child on his medical insurance through his employment, also based upon Mother's representation that the child was his. *Id.*

At the conclusion of the July 16, 1992 hearing, the common pleas court stated:

> Very well. I am going to adjudicate him to be the father of this child. The reason being is The Court has heard sufficient evidence to establish that he held himself out to be the father of this child. Under the estoppel theory, in the mind of this court, the period of time at which he could have, had he wanted to question, he didn't question. That is to say, the three years when there may have been a relationship of some sorts between the defendant and the plaintiff in this action.

> The Court also believes that by in fact acquiring insurance for this child, that, in and of itself, is an indication that he held himself out to be in fact the father of the child. In the mind of The Court, that's sufficient, and I will adjudicate him to be the father. He is estopped.

N.T., 7/16/92, at 29. As noted, the court then attached appellant's wages and entered a temporary support order in the absence of any evidence of the parties' income or expenses.

The Pennsylvania Supreme Court recently commented on the theory of estoppel as it has developed in the area of paternity.

[U]nder certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as the father of the child. These estoppel cases indicate that where the principle is operative, blood tests may well be irrelevant, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted. However, the doctrine of estoppel will not apply when evidence establishes that the father failed to accept the child as his own by holding it out and/or supporting the child.

*Jones v. Trojak*, 535 Pa. 96, ——, 634 A.2d 201, 206 (1993) (citations omitted).

The doctrine of equitable estoppel in Pennsylvania law was described by our Supreme Court in *John M. v. Paula T.*, 524 Pa. 306, 318–19, 571 A.2d 1380, 1386–87 (1990) (emphasis in original) (citations omitted).

We see the Commonwealth/family interests highlighted by the "estoppel" cases. In these cases, it is recognized that, under certain circumstances, a person might be estopped from challenging paternity where that person has by his or her conduct accepted a given person as father of the child. The classic example of this principle is where a man who has lived with a woman and her children for a number of years and has held himself to the world as the father of said children, may be estopped from seeking court-ordered blood tests in a belated attempt to deny paternity.... These estoppel cases indicate that where the principle is operative, blood tests may be *irrelevant*, for the law will not permit a person in these situations to challenge the status which he or she has previously accepted....

The General Assembly has codified the principle of "paternity by estoppel" is its Act of June 17, 1971, ... which provides:

**Children; legitimacy; determination of paternity**

. . . .

(b) For purposes of prescribing benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

. . . .

(2) *If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.*

█ We also have addressed the theory of estoppel on numerous occasions. In *Gulla v. Fitzpatrick*, 408 Pa.Super. 269, 596 A.2d 851 (1991), we noted that the application of the doctrine of equitable estoppel aims at achieving fairness between the parents by holding them *both* to their prior conduct regarding the paternity of the child. We stated in *Gulla*,

The advisability of applying equitable estoppel . . . will often be bolstered by the fact that to do so will serve the best interests of the child, **who has developed a parent-child relationship** with the man who has assumed the responsibilities of fatherhood. As an en banc panel of the court noted in *Commonwealth ex rel. Coburn v. Coburn*, 384 Pa.Super. 295, 558 A.2d 548 (1989):

. . . the best interests of the child sometimes require that a non-biological parent or stepparent, **who has nurtured the child and developed a loving relationship,** must be given custody and/or visitation rights even though his relationship with the natural mother may have ended.

*Id.*, 408 Pa.Super. at 280, 596 A.2d at 856–57. Moreover, principles of estoppel are peculiarly suited to cases where the child is conceived out of wedlock and no presumptions regarding paternity apply. *Id.; Everett v. Anglemeyer*, 425 Pa.Super. 587, 625 A.2d 1252 (1993).

█ Our review of the testimony in this case compels the conclusion that it does not rise to the level of clear and convincing evidence to support a finding of paternity. Both

parties admitted that during the child's infancy, appellant, who then believed the child was his, had a relationship with the child. However, even then the parties did not live together. The trial court, in its opinion, acknowledged that as of July 16, 1992, appellant had not visited the child for one and one-half to three years. Thus, the parties had no relationship since Tyrone was two to three years old. Appellant has never supported the child; appellee admitted that fact in her complaint for support. Both parties noted that when Tyrone was a baby, appellant bought diapers and milk for him.

The trial court stated in its opinion that appellant has had a relationship with Tyrone since his birth and has openly held himself to the world as Tyrone's father. There is nothing in the record to support this statement. Indeed, there is testimony to refute it. Both parties testified that appellant had not seen the child for one and one-half years, at least. N.T., 7/16/92, at 16, 20. Mother testified that she had never taken Tyrone to appellant's residence to visit him. *Id.* at 15–16.

The trial court also erred in determining that appellant's delay in challenging paternity was sufficient to estop his denial of paternity. We have noted that a father may be estopped from denying paternity by long delay in raising the issue at all. *Sanders v. Sanders,* 384 Pa.Super. 311, 558 A.2d 556 (1989). However, we qualified the above by stating that the principle came into play only if the father was aware of non-paternity. The trial court relies on appellant's testimony that he heard some of appellee's friends say that Mother had claimed appellant was not Tyrone's father. A review of the transcript clearly reveals that appellant's testimony in that regard referred to the time period in the year and one-half preceding the July 16, 1992 hearing. Indeed, that was the time period when appellant raised the issue of his non-paternity of Tyrone.

If there is injustice in this case, it is that appellant is being forced to support a child that is not his and with whom he has no relationship. We do not believe that the doctrine of equitable estoppel was meant to apply in a situation with these

facts. In the context that the doctrine is invoked herein, it is meant to apply to a person who openly holds the child out to the world and supports the child. Then, that person is estopped from denying paternity based upon his conduct and the relationship that has inured to the child because of that conduct. While there is some minimal evidence that appellant purchased items for the child when he was a baby and provided health coverage for him based upon the child's mother's representation that the child was his, it does not rise to the level of clear and convincing evidence to support a determination of paternity. Moreover, unlike the trial court, we attach no significance to Mother's statement that appellant is the only father Tyrone has ever known, in light of the facts that appellant has not even interacted with the child in three to four years and that Mother admits to knowing the identity of Tyrone's biological father. Most convincing to us is that there is no clear and convincing evidence of any relationship between Tyrone and appellant.

Orders of November 16, 1992, and July 16, 1992, insofar as they relate to Tyrone Kyle Jefferson Perry, are reversed. Jurisdiction relinquished.