Robert L. WARFIELD, Appellant,

v.

Shelly A. WARFIELD, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 1, 2002.

Filed Jan. 15, 2003.

Jane E. Lessner, Philadelphia, for appellant.

Shelly A. Warfield, appellant, pro se.

Before DEL SOLE, P.J., and ORIE MELVIN and BECK, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Robert Warfield appeals from the trial court's denial of his petition to vacate a prior order accepting his acknowledgement of paternity and directing him to pay child support. He makes several claims of trial court error which he contends entitle him to relief. After review, we find no merit to the issues presented and affirm.

¶ 2 The relevant facts and procedural history may be summarized as follows.[1] Appellee Shelly Warfield married Jeffrey Thompson in November 1986, and the two did not divorce until February 1991. However, in the meantime, Appellee and Appellant Robert Warfield had become intimately involved in the spring of 1989, and Appellee bore a child (who was named Shelton Warfield) in December 1989. Appellant and Appellee were living together by the time of the child's birth, and they began to raise the child together. Appellee bore another child, a daughter, in January 1992, and she and Appellant were

married in September 1993. Throughout this time Appellant believed that he was Shelton's biological father, and for all intents and purposes he and Appellee and the two children were a family.

¶ 3 Appellant and Appellee separated by early 1997, and Appellee filed a petition for custody and support of the minor children. The parties agreed in July 1997 to obtain blood tests to determine paternity of the two children and stipulated that the results would be admissible in the pending proceedings. The results of those tests excluded Appellant as the biological father of Shelton but indicated 99.99% probability that the daughter was his. Notwithstanding these test results, on February 20, 1998, Appellant signed an Acknowledgement of Paternity form as to both children, waiving his rights to a trial as well as appointment of counsel. The trial court entered an order that same date accepting Appellant's acknowledgement of paternity and ordering him to pay support for both children.

¶ 4 In March 1999, Appellant filed a petition to vacate the February 20, 1998 order and acknowledgement of paternity. In his petition he asserted that he had agreed to acknowledge paternity of the children based upon Appellee's assurance that she would not tell Shelton that Appellant was not his biological father. Appellant further asserted that Appellee did not live up to her promise because she had immediately told Shelton the truth, and, as a result, his relationship with the child was strained. He therefore requested the trial court to vacate its February 20, 1998 order

---

1. We note that the certified record is relatively sparse and does not support many of the factual assertions made by the parties in their respective briefs. Of course, this Court must rely solely on the contents of the certified record, and we therefore do not consider these unsubstantiated (and contradictory) allegations in considering the merits of this appeal. See Pa.R.A.P.1921 (setting forth the composition of the record on appeal); Bennyhoff v. Pappert, 790 A.2d 313, 318 (Pa.Super.2001) (stating "[f]or purposes of appellate review, what is not of record does not exist." (Citation omitted)).

and conduct a trial on the issue of paternity.

¶ 5 After a lengthy delay, the reasons for which are not apparent on the record, the trial court held a hearing on Appellant's petition on December 3, 2001.[2] Appellee appeared, representing herself; Appellant and Mr. Thompson also appeared and were both represented by counsel. No testimony or evidence was received, but the trial court requested that counsel submit briefs on the issues of the presumption of paternity of a child born during a marriage, as well as whether paternity by estoppel would rebut that presumption. The trial court entered its order on January 3, 2002 after receipt of the briefs and determined that Appellant is the legal father of Shelton.[3] This timely appeal followed.

■ ¶ 6 At the outset we note that appellate review of support matters is governed by an abuse of discretion standard. *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830 (2002). An abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record." *Id.,* 569 Pa. at 615–616, 807 A.2d at 834 (citations omitted). Appellant raises three issues for our review, which we restate as follows: (1) whether his acknowledgement of paternity should be void because of Appellee's alleged fraud; (2) whether he should be deemed the child's legal father under the circumstances where he is not the biological father; and (3) whether the trial court should have placed more weight on the paternity test results since there is not an intact family and other circumstances do not warrant its findings.

■ ¶ 7 Before addressing these issues, we find it prudent to review the applicable law related to the presumption of paternity and paternity by estoppel. In *Brinkley v. King,* 549 Pa. 241, 701 A.2d 176 (1997), our Supreme Court addressed these two principles as follows.

[T]he essential legal analysis in these cases is twofold: first, one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity.

*Id.,* 549 Pa. at 250, 701 A.2d at 180. The Court went on to explain that the policy underlying the presumption of paternity was the preservation of marriage, and the ever-changing nature of relationships in our society dictated that the presumption would only apply where that underlying policy would be advanced by its application. In other words, where there is an intact family or marriage to preserve, the presumption applies; if there is no marriage to protect then the presumption is not applicable. *Id.,* 549 Pa. at 250–51, 701 A.2d at 181. As the parties in *Brinkley* did not have an intact marriage to preserve at the time the support action was initiated, the Court remanded the matter to the trial court for consideration of the issue of estoppel.

¶ 8 Two years later, the Supreme Court again had occasion to review paternity by estoppel in *Fish v. Behers,* 559 Pa. 523, 741 A.2d 721 (1999). Once again, the Court

---

**2.** Appellant and Appellee had divorced in May 2000.

**3.** The trial court also denied a request for paternity testing of Mr. Thompson.

refused to apply the presumption of paternity because there was no intact family or marriage. It then went on to explain estoppel in such cases as follows.

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child."

*Id.*, 559 Pa. at 528, 741 A.2d at 723 (quoting *Freedman v. McCandless*, 539 Pa. 584, 591–92, 654 A.2d 529, 532–33 (1995)). We address Appellant's arguments with these guiding principles in mind.

 ¶ 9 First, Appellant asserts that his acknowledgement of paternity was not valid. He makes several arguments in support of this claim. First he contends that the acknowledgement does not meet the requirements of 23 Pa.C.S.A. § 5103(a). However, an acknowledgement of paternity may not be challenged after sixty days of its issuance except on the basis of fraud, duress, or material mistake of fact. 23 Pa.C.S.A. § 5103(g). Because Appellant has not established such grounds and further failed to appeal from the support order entered, we find no mer-

it to this argument. *See Hamilton v. Hamilton*, 795 A.2d 403 (Pa.Super.2002) (rejecting fraud argument where no evidence of record was cited to support conclusion that the mother fraudulently caused the appellant to acknowledge paternity); *McConnell v. Berkheimer*, 781 A.2d 206 (Pa.Super.2001) (finding the appellant was estopped from rescinding his acknowledgement of paternity when more than sixty days had passed and he failed to establish fraud, duress, or material mistake of fact).[4]

 ¶ 10 Moreover, Appellant's additional argument that the presumption of paternity should have been applied to Mr. Thompson is also meritless. At the time of Shelton's birth, Appellee was living with Appellant, and thus her marriage to Mr. Thompson was no longer intact. Additionally, by the time that the complaint in support was filed, Appellee had long been divorced from Mr. Thompson. The presumption of paternity therefore does not apply and this argument fails.

 ¶ 11 Appellant's second argument is that the doctrine of paternity by estoppel should not have been applied. He relies principally on *Jefferson v. Perry*, 432 Pa.Super. 651, 639 A.2d 830 (1994) and *Kohler v. Bleem*, 439 Pa.Super. 385, 654 A.2d 569 (1995), *appeal denied*, 541 Pa. 652, 664 A.2d 541 (1995). In *Jefferson*, we refused to apply the doctrine of paternity by estoppel where the putative father had no relationship with the child, had never supported the child, and had never lived with the mother. Moreover, the putative father had not seen the child for several

---

4. We reiterate that unsubstantiated assertions contained in the parties' briefs do not constitute record evidence. For example, Appellant avers that Appellee told Shelton within days of the initial support order that Appellant was not his biological father. This unsupported assertion does not establish fraud, which must be proven by clear and convincing evidence. 23 Pa.C.S.A. § 5103(g)(2). The principle that our review is limited to the contents of the certified record is particularly salient where, as here, Appellee's brief portrays a glaringly different (and similarly unsubstantiated) version of events.

years prior to the filing of the support complaint. In *Kohler*, the appellant had undergone a vasectomy and married four years afterward; the wife learned she was pregnant several years later. After the child was born the family remained intact for several years until the appellant learned that the child's father was his next-door neighbor. After the parents separated, the mother filed a support complaint against the neighbor; he in turn joined the former husband as an additional defendant and claimed that the ex-husband was estopped from denying paternity. We disagreed with the trial court's application of the doctrine of paternity by estoppel under those facts, finding it significant that the mother had misrepresented the identity of the child's father. We thus precluded the neighbor from utilizing equitable principles.

¶ 12 We find both *Jefferson* and *Kohler* are clearly distinguishable from the facts of the present case. Instantly, Appellant was living with Appellee from the time of Shelton's birth in December 1989 until their separation in 1997. The child has Appellant's surname, and Appellant's name appears on the birth certificate. The parties were married for nearly seven years, and lived as a family unit with Shelton and his sister throughout the marriage. Even after a question regarding Shelton's paternity arose and blood testing indicated to Appellant that he was not the natural father, Appellant voluntarily signed an acknowledgement of paternity and complied with the support order for a year before filing the petition to vacate. Under these circumstances, the trial court properly concluded that Appellant is estopped from denying paternity of Shelton. *See McConnell*, supra (applying doctrine of paternity by estoppel where mother truthfully told the appellee she did not know who the father was, but appellee gave the child his surname and signed acknowledgement of

paternity, and the parties lived together for four months after the birth; no challenge was made to paternal status until support action commenced). Moreover, we have held that an obligor who has failed to appeal the entry of a support order is estopped from denying paternity. *Id.* For all of these reasons, we find no abuse of the trial court's discretion in concluding that Appellant is estopped from denying paternity and refusing to vacate its prior order.

■ ¶ 13 Finally, Appellant asserts that the trial court should have accorded greater weight to the results of the blood tests. This argument is directly contrary to the established law relating to paternity by estoppel, because "the law does not allow a person to challenge his role as a parent once he has accepted it, even with contrary DNA and blood tests." *Lynn v. Lynn*, 2002 PA Super 317 ¶ 8, 809 A.2d 927 (October 15, 2002). Thus the fact that Appellant is not Shelton's biological father is irrelevant, and the trial court properly did not rely on such evidence. *McConnell*, supra.

¶ 14 Order affirmed.

¶ 15 DEL SOLE, P.J. joins.

¶ 16 BECK, J. files a Concurring Opinion.

CONCURRING OPINION BY BECK, J.

¶ 1 I concur in the result.

¶ 2 Appellant formally acknowledged paternity and one year later sought to invalidate his acknowledgement. Under the law, a person must challenge his acknowledgement of paternity within sixty days of its issuance unless he can prove fraud, duress or material mistake of fact. 23 Pa.C.S.A. § 5103. Appellant insists that he proved fraud because, according to him,

Mother reneged on her promise not to tell her son that Appellant was not his father, a promise Mother made in exchange for an acknowledgement of paternity that both parties knew to be false. Even assuming the truth of appellant's assertions, I do not believe he has established fraud under § 5103.

¶ 3 The fraud exception set out in the statute, I believe, addresses those instances in which a man acknowledges paternity because *he believes he is the child's father* and his belief is based on fraudulent misrepresentations upon which he reasonably relied. Section 5103 was not meant to cover collateral agreements between parties who know conclusively that the man is not the father but who nonetheless reach some agreement about how they will behave in the future. In my view, the alleged pact between Appellant and Mother not only reveals the parties' irresponsible approach to this very serious area of the law, it also has no relevance in this case. The law simply does not protect a party who, despite being *certain* he is not the biological father of a child, acknowledges paternity of that child.

¶ 4 At the time Appellant signed the acknowledgment, he knew he was not the child's father; therefore, he was not the victim of fraud with respect to the child's paternity. Absent fraud, he is without an avenue of relief.